SHELL PETROLEUM CORPORATION *et al. v.* KENNEDY.

(Division A. May 2, 1932. Suggestion of Error Overruled May 30, 1932.)

[141 So. 335. No. 29946.]

Bozeman & Cameron, of Meridian, for appellants.

Butler & Snow, of Jackson, and **Dunn & Snow**, of Meridian, for appellee.

Argued orally by **Ben Cameron**, for appellant, and by **Chas. B. Snow**, for appellee.

**McGowen, J.**, delivered the opinion of the court.

Kennedy, the appellee, sued Shell Petroleum Corporation and T. C. Houston, master and servant, respectively, for personal injuries received by him in a collision between a car driven by appellee and a car driven by Houston. Kennedy was traveling eastward on the public highway into Meridian, and Houston was driving westward out of Meridian. By the verdict of the jury and the judgment of the court there was a substantial recovery against both defendants in favor of Kennedy, and Houston and Shell Petroleum Corporation prosecute an appeal to this court.

In view of the conclusion we have reached as to the disposition of the whole case, we deem it unnecessary to detail the facts of the collision. Suffice it to say that Kennedy and his witnesses made out a case of liability as against Houston, while the latter and his witnesses likewise made out a case of liability against Kennedy. In other words, as is usual in these cases, each party placed the blame for the accident upon the other party.

We shall first consider the liability of the Shell Petroleum Corporation as to whether or not the injury received by Kennedy was committed by Houston in the course of his employment and in the furtherance of the master's business. On this point, the essential facts are that Houston was employed by the Shell Petroleum Corporation as its city manager in the city of Meridian, where it maintained a bulk plant for the storage of gasoline and oil, which was under the supervision of Houston. His duties were to promote the sale of gasoline and oil in that territory, secure contracts for the handling of its products from retail dealers, and generally do those things which appertain to the promotion of the sale of the products of the Shell Petroleum Corporation within

the patronizing territory. On a July afternoon about 5:30 or 6 o'clock, he left his office in the car furnished him by the master and took his wife for a drive westwardly out of Meridian. He intended to go to Chunky, about fifteen miles from Meridian, and there see a man by the name of Lewis. He conceived the idea that it would be to the interest of his company for a friend to acquire Eastburn's filling station in Meridian; having learned from one of the owners, a real estate agent, that it could be acquired. He recommended a man by the name of Fleming as a prospective purchaser, and ascertained from Fleming that he would become a customer of the Shell Petroleum Corporation, using its oil and gasoline products. Fleming did not have sufficient money with which to purchase the filling station. Houston learned that Lewis, at Chunky, was a man who might lend the money to Fleming with which to buy the filling station, and Houston's purpose on this drive was to interview Lewis, with the view of enlisting his aid in the project to the extent of making the loan to Fleming. While on this trip, six or seven miles from Meridian, the collision with Kennedy's car occurred.

The record discloses that the Shell Petroleum Corporation owned the car and furnished it to Houston for use by him in connection with his duties as its manager, but his use thereof was not restricted, and he had control of the car all of the time, using it for his own purposes as well as in connection with the master's business. The Shell Petroleum Corporation knew nothing of this proposed arrangement, and never expressly authorized Houston to secure loans for prospective customers, nor was such course of dealing approved by, or brought to the notice of, the master. Houston was asked the question if he had before that time made other such arrangements for prospective customers, and his answer was "something," which is unexplained in the record. It is clear, according to Houston's view, that, if he negotiated the loan from Lewis to Fleming, and Fleming purchased

the Eastburn filling station therewith, Houston and his master would thereby increase their business to the extent of the contract with Fleming.

The court below, on these undisputed facts, submitted the question to the jury for its determination as to whether or not, at the time of the collision, Houston, the servant, tortiously injured Kennedy in the course of his employment by the master and in furtherance of its business.

Counsel for opposing views have been diligent in presenting the many decisions of this court on this question. Each case must be judged by its own facts. In this case, it is not contended that Houston was expressly authorized to negotiate loans, so that the question is, Can we say that Houston was acting within the course and in the line of his employment when the injury occurred, as well as in the furtherance of his master's business? In this connection we have considered especially Barmore v. Ry. Co., 85 Miss. 426, 38 So. 210, 70 L. R. A. 627, 3 Ann. Cas. 594; Indianola Cotton Oil Co. v. Crowley, 121 Miss. 262, 83 So. 409; Davis v. Price, 133 Miss. 236, 97 So. 557; Walters v. Stonewall Cotton Mills, 136 Miss. 361, 101 So. 495; Natchez, etc., Ry. Co. v. Boyd, 141 Miss. 593, 107 So. 1; Alden Mills v. Pendergraft, 149 Miss. 595, 115 So. 713; Wells v. Robinson Bros. Motor Co., 153 Miss. 451, 121 So. 141; Gill v. L. N. Dantzler Lumber Co., 153 Miss. 559, 121 So. 153; Primos v. Gulfport Laundry & Cleaning Co., 157 Miss. 770, 128 So. 507; Craft v. Magnolia Stores Co., 161 Miss. 756, 138 So. 405; Western Union Tel. Co. v. Stacy (Miss.), 139 So. 604. We shall not undertake to detail the facts of each of these cases, but shall notice a few cases urged by counsel as being decisive of the question here presented.

In the Primos Case, supra, this court held that a tortious act of a servant may be within the scope of his employment for which the master would be liable, although done partly to serve the agent's own purposes, or for his own pleasure. In that case the laundryman

went to a dance with the dual purpose of attending the festivities and also soliciting articles from prospective customers to be dry-cleaned. A part of his duties was to solicit laundry or clothing for dry-cleaning, to take them to the laundry where they were cleaned by the master, and then to return them to the customers. He was placed in charge of the automobile which he was driving for that purpose. Although in the instant case Houston was taking a pleasure drive for the benefit of his wife, if at the same time he had intended upon reaching Chunky to solicit business from Lewis, the Primos Case would apply; but no such facts exist here. The case may be thus stated: If the servant could induce Lewis to lend Fleming the money, and Fleming, having secured the loan, had made the purchase of the Eastburn filling station, and then Fleming had made a contract with Houston for the benefit of the master, the master's business would have been furthered to that extent; but it cannot be reasonably said that the servant in the instant case was acting within the apparent line of his duties or course of his employment. It requires too fanciful a stretch of the imagination to so hold. It is chimerical; it is too remote; it is not basically sound to say that Houston was acting within the course of his employment, under the facts before us in the case at bar.

This case is more like the case of Davis v. Price, supra, where the servant volunteered to drive a shipment of ice cream in the absence of the regular driver. It not being the servant's duty so to do, we held that the alleged servant was not acting within the line of his duties, in the course of his employment. Likewise in the case of Craft v. Magnolia Stores Co., supra, where the manager of the store left the place of business to have the home of Mrs. Craft searched for an article which he imagined had been stolen from the store under his management and control, and, while so engaged, uttered slander against Mrs. Craft, we held that the course of action of the servant was not within the scope of his employment, nor in the

line of his duty. All the cases are to the effect that it does not matter what particular course of action the servant adopts, however willful, however wrongful, if it is in the line of his duty and in the course of his employment, the master is liable therefor. All of these decisions mean this and only this.

We are of opinion that the court should have granted the Shell Petroleum Corporation a peremptory instruction. The trip made by Houston on this occasion was voluntary, wholly without and not apparently within the course of his employment, although if he had been successful his trip might have eventually in a degree furthered the master's business.

On a consideration of the whole record, we think Houston's liability vel non was a question for the jury. The many instructions secured by the plaintiff, taken together with those secured by the defendant, correctly inform the jury, when taken as a whole, as to the controlling principles of law. It is true that a number of the instructions granted to the plaintiff are subject to criticism; for instance, the plaintiff in several instructions omitted to tell the jury that the burden was on him to establish this case by a preponderance of the evidence. It is unsafe for a plaintiff to omit these thought to be important words as to the burden of proof, for it might be that in a case the defendant would not secure any instructions, and the omission of these words would require a reversal of the case.

Likewise we criticise an instruction granted to the plaintiff setting forth the elements of damage in which the jury was authorized to allow damages for any or all past, present, or future mental anguish, immediately succeeding the words physical pain and suffering. There was no element of independent mental anguish in this case. Of course, in this state it is error to instruct a jury that it may allow damages for mental anguish generally, but only that anguish which arises from the physical pain suffered from the injury complained of. How-

ever, in the case of Pan-American Petroleum Corporation v. Pate (Miss.), 138 So. 350, we held that an instruction similar to this did not necessarily mean that damages would be allowed for mental suffering after the physical pain had ceased; so we cannot reverse the case for that reason.

The jury awarded, and the judgment was for, five thousand dollars in this case. The appellee did not realize on the night of the accident or the following day that he was at all injured by the collision, permanently or to any appreciable extent. He had some superficial cuts and bruises; especially one on the knee which he had Dr. Anderson bind up on the following morning. It had been about a year since the accident to the time of the trial. He testified that before that time he had never suffered any pain in his back, but since that time he had suffered pain continuously; he does not say how acutely, but that he drove his car sitting sideways, and at night he was awakened by the pain in his back and had to change his position while sleeping. He is not shown to have lost any time from work in connection with this injury to his back. He has expended about one hundred dollars in hospital fees and consultations with physicians. He is thirty-five years of age. In the lower court the injury was described by Dr. Stingily who made an X-ray just before the trial. He said he found by the X-ray that there was trouble located in the dorsal vertebra which he denominated arthritis, meaning inflammation and commonly described by the laymen as rheumatism; that it might have been caused by a traumatism; that is, a blow. The physician could not tell anything about it except there was an evidence of roughness at this point; there were no bones broken, nor apparent permanent injury. The physician said that he imagined the roughness disclosed by the X-ray picture would cause some pain, rheumatic in its nature.

When we take into consideration all the facts we have detailed, we think the recovery in this case is unreason-

able. We are considering appellee's guess as to the value of his car, his guess as to the amount of money he had expended; one hundred dollars to one hundred twenty-five dollars for physician's bills, etc., and we have taken into consideration the physician's description of his injuries and his own version of his physical pain. The verdict is excessive, twice as much as we think should have been allowed, making liberal allowances for every element of damages. Being of the opinion that the verdict is double what should have been allowed, we therefore believe that the verdict of the jury evinces passion and prejudice to the extent that we think it should not be allowed to stand. We think two thousand, five hundred dollars is a liberal amount to compensate appellee for all damages he sustained, and, if he will enter a remittitur in the sum of two thousand, five hundred dollars, the case will be affirmed. Otherwise it will be reversed and remanded.

Reversed, and judgment here for Shell Petroleum Corporation; affirmed with remittitur as to Houston.