STOVALL *v.* JEPSEN.

(Division B. April 26, 1943. Suggestion of Error Overruled June 7, 1943.)

[13 So. (2d) 229. No. 35337.]

**Brewer & Sisson**, of Clarksdale, and **Watkins & Eager**, of Jackson, for appellant.

Dulaney & Bell, of Tunica, for appellee.

120

Argued orally by **Ed. C. Brewer** and **P. H. Eager**, for appellant, and by **J. W. Bell, Jr.**, and **J. W. Dulaney**, for appellee.

**Anderson, P. J.**, delivered the opinion of the court.

Appellee Mrs. Jepsen brought this action in the circuit court of Tunica County against the appellant Stovall to recover damages for personal injuries she received alleged to have been caused by the negligence of Stovall's servant Pierce driving Stovall's car. The declaration alleged and the plaintiff undertook to prove that the injury was caused by a violation by Pierce of Section 60 (a) of the Uniform Motor Vehicle Act, Chapter 200, Laws of 1938, which is in this language: "No vehicle shall be driven to the left side of the center of the roadway in overtaking and passing another vehicle proceeding in the same direction unless such left side is clearly visible and is free

of oncoming traffic for a sufficient distance ahead to permit such overtaking and passing to be completely made without interfering with the safe operation of any vehicle approaching from the opposite direction or any vehicle overtaken. In every event the overtaking vehicle must return to the right-hand side of the roadway before coming within 100 feet of any vehicle approaching from the opposite direction.''

The trial resulted in a verdict and judgment for the plaintiff in the sum of $3,000, from which the defendant prosecutes this appeal.

Highway 61 runs south from Memphis, Tennessee, through this state. Mrs. Jepsen's injury occurred about midnight on Christmas Eve, 1940, at a point about seven miles north of Tunica. She and her husband and two guests, Mr. and Mrs. Evans, were traveling south on Highway 61 in Mr. Jepsen's car being driven by him. Their car crashed into a transport truck going north on the highway to Memphis. Their car was wrecked and Mrs. Jepsen was seriously injured. The defendant Stovall was engaged in delivering the Commercial Appeal, a Memphis daily newspaper, at Tutwiler, Sumner, Webb and Greenwood in this state. He used a Ford car for that purpose and had Pierce employed to drive the car and make the deliveries. At the time of the accident Pierce was engaged in that mission. The transport truck was about 40 feet long with a capacity to carry four automomiles. The plaintiff's evidence tended to show that immediately before their car crashed into the truck, Pierce was driving north instead of south, and was trying to pass the truck with his lights, along with those of the truck, glaring up the highway north; that at the same time the Jepsen car and another one in front of it, the Massey car, were coming south and on account of the confusion of vision caused by those conditions the Jepsen car was wrecked by contact with the truck, resulting in the injury. It is undisputed that Pierce was employed by Stovall alone to make deliveries of the Commercial Ap-

peal at the points indicated, and was on that mission and had not made the deliveries and did not do so until after the accident. And the evidence is also without conflict that after the collision the truck traveled north only about half of its length, 20 feet, before it stopped, and the Pierce car was parked something like 200 feet south, facing north. Pierce testified that after he passed the truck and had reached a point two or three hundred feet south of it he heard a crash back of him; that he thereupon stopped his car and turned it around facing north and parked on the shoulder of the highway on the west side; that he did this so as to throw his lights on the tragedy that he suspected had taken place north of him with the view of rendering aid. This meant, of course, that when the Jepsen car ran into the truck his car was facing and moving south, and, therefore, could not have been conducive to the accident. He testified that after doing what he could to help out with the trouble he turned his car south and proceeded on his mission of delivering the papers, which he accomplished as usual.

One of the grounds relied on for reversal is that the defendant was entitled to a directed verdict upon the ground that regardless of whether the testimony of the plaintiff was true or that of Pierce, the latter was not engaged about the business for which he was employed but about a mission of his own. Such verdict was requested and refused by the court. We have reached the conclusion that that contention is well grounded. If a servant steps aside from the master's business for some purpose of his own disconnected from his employment, the relationship of master and servant is temporarily suspended and "this is so no matter how short the time, and the master is not liable for his acts during such time." 39 C. J., pages 1925 and 1926; 5 Blashfield, Cyclopedia of Automobile Law and Practice, Perm Ed., sec. 3046; Bourgeois v. Mississippi School Supply Co., 170 Miss. 310, 155 So. 209; Southern Bell Tel., etc., Co. v. Quick, 167 Miss. 438, 149 So. 107; Brand v. Tinnin,

190 Miss. 412, 200 So. 588; Brown v. Bond, 190 Miss. 774, 1 So. (2d) 794.

It is undisputed, as argued on behalf of appellee, that the fact that Pierce was a servant of the defendant and was using the defendant's car on the night of the accident, made out a prima facie case that he was serving the defendant in all he did  However, the evidence without any substantial conflict met the prima facie case and overcame it.  It showed that when Pierce turned around and faced north and went up to the scene of the accident he was not serving his master but himself alone.  His duties to his master required him to go in the opposite direction in order to deliver the papers.  And that is true also, if, according to the evidence for the plaintiff, he was proceeding north and trying to pass the transport truck.  He had no business north; his business was south.  It is argued that he may have turned around in order to go back and get gasoline or pick up his hat which might have blown off.  There is no evidence, however, to that effect, and if there was any that might have been adduced it was the duty of the plaintiff to do so.  The evidence shows he went on south on his mission without getting gasoline and there was nothing to show that he went bareheaded. In other words, the defendant met the prima facie case made out by the plaintiff completely by showing that under any view of the evidence if Pierce contributed to the accident he was not serving his master but was serving himself alone.

Reversed and judgment here for appellant.