S. & W. Const. Co. *v.* Bugge.

(Division B. · May 24, 1943. Suggestion of Error. Overruled July 3, 1943.)

[13 So. (2d) 645. No. 35360.]

**Jackson, Young & Friend,** of Jackson, for appellants.

J. **Ed. Franklin** and **Lamar F. Easterling**, both of Jackson, for appellee.

**Griffith, J.**, delivered the opinion of the court.

The principal defendants, partners doing business as the S. & W. Construction Company, the appellants here, were the contractors in the construction of the ordnance plant, or a part thereof, located about four or five miles from the Town of Flora, in Hinds County. Ellis, the other defendant, was employed by the contractors as cost clerk. His duties were to obtain daily, within the grounds of the plant beginning at 8 o'clock each morning, the detailed data of the cost of doing the work on what was known as Bag Loading Line No. 2, and for the entry of the details, he was furnished suitable blanks. When the data for each of these were fully obtained, Ellis would then go in the afternoon to a small office on the reservation to which he had access and would there complete his report for the day, including the appropriate compilations, and would then take the papers or documents to the main office in the Town of Flora and there file them, which would be about 5 o'clock in the afternoon.

After he had filed the completed report and the accompanying papers at the main office, the duties of Ellis for that day would be at an end and until his return to the

plant for the resumption of his work on the following morning at 8 o'clock. Ellis had his own automobile which he used in going to his work in the morning and in departing therefrom in the afternoon. He lived in an adjoining county, and generally went to his home to spend the night, but sometimes he stopped over for the night at the neighboring City of Jackson. His employers had no obligatory interest in, or control over, the means or manner by which he arrived at the plant each morning, nor by which he departed from his work in the afternoon. So far as his employers were legally concerned he could have walked, ridden a horse, or used the public busses. They paid no part of the expenses of the operation of his automobile.

On Saturday afternoon, November 8, 1941, when Ellis had completed his work of obtaining the detailed data of the day, he went to the small office on the grounds which he had been customarily using for completing his compilations but found that it had been moved. He then proceeded to the main office in the Town of Flora, expecting to complete his papers at that office, but on arrival there found that the main office had also been moved, but he did find there one Hurt who was Ellis' superior in this work, and Hurt told Ellis to take the reports and papers home with him and there complete the compilations and that he should file them at the main office on his return to his work at the plant on the following Monday morning at 8 o'clock, Hurt informing Ellis at the same time that the main office would be open on the plant grounds when he arrived there at 8 o'clock on Monday morning.

Ellis thereupon took the papers with him, completed the compilations at his home, and had them with him, either in his pocket or in the glove compartment of his automobile, on Monday morning, November 10, 1941, when he was returning to his work and so as to be there by eight o'clock. He was pursuing his ordinary and usual course of travel from his home to the plant, when about 7 o'clock or a few minutes thereafter and when about twenty miles from the plant, he ran over and seriously injured the com-

plainant. A decree was obtained against all the aforesaid defendants as joint tort-feasors, it being the contention of the complainant that at the time of the injury Ellis was an employee of the principal defendants acting within the scope of his employment and in the furtherance of the business of his employers.

We are of the opinion that what Ellis was doing at the time of the injury was that of serving his own purpose of transporting himself to the place where his work for the day was to begin, and the fact that he happened, under the stated circumstances, to have with him some papers belonging to his employers was a mere collateral incident, or that at the most that could be said of it, he was engaged in the dual purpose of serving himself and also his employers.

In such cases as last mentioned the rule to be applied is found in Primos v. Gulfport Laundry & Cleaning Co., 157 Miss. 770, 128 So. 507, 509, where the alleged servant was engaged at the time partly in purposes of his own and partly in the furtherance of the business of his employer and within the range of his appointed duties, and there the rule was announced, quoting from the comment under Section 236, A. L. I. Rest. Agency, that "the fact that the predominant motive of the servant is to benefit himself or a third person, does not prevent the act from being in the scope of employment. If the purpose of serving the master's business actuates the servant to any appreciable extent, the master is liable if the act otherwise is within the service."

It is not necessary here for us to undertake to define more precisely what is required to be shown in order that the extent of the actuation may be considered as appreciable; it is enough here to say that it must be more than that which is merely technical, or suppositional, or argumentative—it must amount to more than a scintilla. Compare Shell Petroleum Corp. v. Kennedy, 167 Miss. 305, 312, 141 So. 335.

There is no substantial foundation in the facts of this case to sustain a suggestion that the alleged servant would

have taken any other course either as to time, manner or place, than he did had the papers mentioned not been in his possession. Had he not taken them home with him on Saturday, he would nevertheless on Monday morning have returned to his work, using his car in so doing and so as to arrive at his work at 8 o'clock a. m. and would, in all probability, have passed along the place where the injury occurred and about the same time. There is nothing, therefore, except to avail of the inadmissible elements above mentioned, which would sustain the affirmative of the issue that the alleged servant was actuated to any appreciable extent in making the trip and in the manner which he did by the fact that these papers were to be returned that same morning as a collaterally incidental part of his return trip—a trip which he would have made for himself, papers or no papers. He had not been sent on a mission to obtain and bring papers—he had not even been sent out of his way to do so. Had a superior employee met Ellis on the road that morning and had given him an important letter to deliver to the office on his arrival there, we suppose none would contend that the employers would be liable for what Ellis did thence on the way.

The decree should have denied any liability on the part of appellants, and such a decree will be entered here. Ellis did not appeal, and the decree stands undisturbed as to him.

Reversed, and decree here for appellants.