KRAMER SERVICE, INC., *v.* ROBINSON *et al.*

(Division A.   March 17, 1947.   Suggestion of Error Overruled April 28, 1947.)

[29 So. (2d) 456.   No. 36350.]

Carl Marshall, of Gulfport, **Jackson & Young**, of Jackson, and **Gordon Boswell**, of New Orleans, La., for appellant.

U. B. Parker, of Wiggins, and R. A. Wallace, of Gulf-port, for appellees, Mrs. Lillie Robinson and Eldon Robinson.

**Joe H. Daniel**, of Jackson, for appellee, W. O. Martin.

Argued orally by **Carl Marshall**, for appellant, and by **U. B. Parker**, for appellees.

**Roberds, J.**, delivered the opinion of the court.

Apellees, Mrs. Lillie Robinson and her minor son Eldon Robinson, wife and child respectively of Roy L. Robin-

son, deceased, brought an action against Tri-State Transit Company of Louisiana, Inc., and its alleged servant, Pat Havens, and against Kramer Service, Inc., and its alleged servant, W. O. Martin, to recover damages for the death of Robinson caused, as claimed by plaintiff, by the negligence of said defendants. The declaration set out that a Kramer truck, driven by Martin, and a Tri-State bus, driven by Havens, were proceeding in a southerly direction some three miles south of Wiggins, Mississippi, the bus being behind and near the truck. As ground of liability against Tri-State and Havens, it asserted that Havens, as such driver and servant, was driving in a fast and reckless manner; that rain was falling and the weather foggy, and he negligently undertook to pass the Kramer truck and crossed into the left lane of the road; that Robinson was proceeding north in that lane, where he had a right to travel, and that there was a head-on collision between the automobile being driven by Robinson and the bus driven by Havens, resulting in the death of Robinson. As ground of liability against Martin and Kramer, it was alleged that Martin suddenly, and without warning, decreased his speed, making it necessary for Havens to either pull into the left lane or strike the truck, and that the truck had over its top a tarpaulin which was loose and flapping on the left side of the truck, rendering it impossible for Havens to see a signal had Martin given one. In other words, liability of Tri-State and Kramer rests upon the negligence of their respective employees while such employees were acting within the scope of their employment and about the business of their employers.

In the course of the trial, plaintiffs took a non-suit as to Tri-State, having reached a settlement with that defendant. The case proceeded against Havens, Martin and Kramer. The jury returned a verdict in favor of Havens and Martin, thereby exonerating them from negligence, but found against Kramer in the sum of $19,500, from which verdict, and the judgment entered thereon, Kramer appeals here.

A number of serious questions are raised on the appeal, but we deem it necessary for us to pass upon only one of them, which will dispose of the case. And that is whether or not Martin was about Kramer's business and acting within the scope of his employment at the time and place of the accident, assuming, but not deciding, that the truck involved was owned by Kramer and was being driven by Martin. And, in this connection, it should be stated that under the pleadings and proof of plaintiffs, Martin cannot be separated from the truck. Plaintiff's assert that the truck was being driven by Martin and that it was his negligence that caused the accident, and they seek a personal judgment against him because of such negligence. Their proof is directed to identifying him as such driver. There is no intimation that it was Kramer's truck being driven by some one else.

The record discloses that Kramer had the exclusive right to distribute and deliver certain brands of beer in a designated territory, which territory, it may be assumed, although it is not entirely clear, included the place of the accident. Martin was employed by Kramer to drive one of its trucks and deliver beer in a specified territory. That territory was within the confines of Camp Shelby, some ten miles south of Hattiesburg. At times he was especially directed to deliver within Hattiesburg, but these were special individual assignments in particular cases. It is further shown that during the course of his rather extended employment he, by special direction in emergencies, had assisted a Mr. Stokes in making one or two deliveries at Wiggins, this being within Stokes' exclusive territory, on which occasions Stokes drove his own truck, which was an International truck, color red, whereas the truck always driven by Martin was a blue Chevrolet truck. But, it is not intimated that Martin had any such special assignment on this occasion. On the contrary, it is shown without dispute that he did not have. It is further shown, without any conflict, that Martin had no authority to be at this place at this time in the dis-

charge of any duty as employee of Kramer, and if he were there he was on a private mission of his own. He had entirely abandoned his master's business and was far from the scene of his duties. The scene of the accident was some 30 miles south of Camp Shelby. It might be added that this tragedy occurred about 8:30 on the morning of Monday, September 1, 1941, which was Labor Day. Martin and a number of disinterested persons, who were operating canteens within Camp Shelby, to whom Martin regularly delivered beer, testified, positively and unequivocally, that Martin was continuously within Camp Shelby from about 7:30 o'clock in the morning to around noon of the day in question, delivering beer to these canteens, using for that purpose the truck claimed to have been in the accident. But, aside from that, it is uncontradicted, that if he were present and involved in this accident, he was not about Kramer's business and had no right, authority or duty to be there as a representative of Kramer. He had gone some 30 miles beyond the territory in which lay his duties and authority, and was traveling in the opposite direction therefrom. In such case, the master is not liable for the acts of the servant. Thomas-Kincannon-Elkin Drug Co. v. Hendrix, 175 Miss. 767, 168 So. 287; Bourgeois v. Mississippi School Supply Co., 170 Miss. 310, 155 So. 209; Shell Petroleum Corp. et al. v. Kennedy, 167 Miss. 305, 141 So. 335; Brand et al. v. Tinnin, 190 Miss. 412, 200 So. 588; Stovall v. Jepsen, 195 Miss. 115, 13 So. (2d) 229.

Reversed and judgment here for appellant.