JOE GURKLIES, Appellant, v. GENERAL AIR CONDI-
TIONING CORPORATION, Respondent.

Dee B. Tanner and Kenneth B. Hughes for Appellant.

Bauder, Veatch & Gilbert, Reginald I. Bauder and W. I.
Gilbert, Jr., for Respondent.

WHITE, P. J.—This is an appeal from a judgment entered
after the granting of a nonsuit in a personal injury action
brought against William Owen Adair, who was driving his
own automobile when it was involved in an accident, and
respondent, General Air Conditioning Corporation, employer
of the defendant Adair. The nonsuit was granted as to re-
spondent corporation upon the ground that at the time of the

accident Adair was not driving his automobile in the course of his employment, but was returning to his home after his day's work.

It is urged by appellant that the court should have applied the doctrine of respondeat superior for the reason that, although the employee had finished his day's work and was returning to his home, the "going and coming" rule was not applicable because the employee was carrying in his automobile some tools which were used in his work and which, under the terms of his employment, he was required to safeguard whenever it was impracticable to return them to his employer's premises at the end of the day and before going home; that in such circumstances the employee should be deemed to be traveling in performance of a service for his employer even though he is then returning home.

Appellant appears also to contend that the driving of the automobile at the time of the accident, with or without tools, was in furtherance of the employer's business, urging that the employee "was fulfilling his contract obligation to his employer by having with him his automobile, at all times, ready to move from job to job and shop to job. It was just as necessary to his employer's business to take his automobile to the job as it was to use it there during the working day . . ." We are unable to follow appellant in this regard. The portions of the union contract quoted in the brief contain no requirement that the employee furnish an automobile—merely that he provide for himself "necessary transportation within the said limits" (8-mile radius from 7th and Broadway, Los Angeles) "from home to job or shop at starting time and from shop or job to home at quitting time," and the employer agreed to "provide or pay for all necessary additional transportation during regular working hours." There is no evidence that as a condition of his employment the employee was required to furnish an automobile, and except for the question raised by the fact that Adair was carrying company tools at the time of the accident, the case plainly appears to fall within the ordinary "going and coming rule."

On Friday, February 15, 1947, Adair was working on an outside job at a lighting fixture plant. Company tools, consisting of an electric drill and some block and tackle, were delivered by the employer to the job and charged to Adair. The job was not completed at the end of the day. There was no place to lock the tools up on the job, so Adair put the tools in the back of his automobile, intending to return to the

job on Monday morning. He did not ordinarily work on Saturdays, but on Friday evening he was told to report for work the next day. On Saturday Adair worked at the location of his employer's new plant, where there was no place to store the tools which were still in his automobile. After work, Adair drove to the home of his foreman, where he had some drinks. After leaving the foreman's home and while driving to his own home, Adair was involved in a traffic accident which resulted in injuries to the plaintiff.

The evidence disclosed that when company tools were charged out to an employee, he was considered responsible for them. The foreman testified in part as follows:

"Q. . . . Now, when these employees received the responsibility for caring for company tools, was it customary that they carry those tools in their automobiles? A. Well, they were just responsible for them. It did not make any difference whether they carried them or left them on the job. Q. Well, was it customary to carry them in your car provided there was no place to keep them? A. Safe on the job? Q. Well, was that the prevailing custom? A. I imagine."

The foreman also testified:

"Q. . . . If the employee refused to accept these tools and refused to accept the responsibility for the care of these company tools, would he have been fired? A. Yes, if he could not do the job without them. Q. So that he was required to accept that responsibility in respect to these tools, is that correct? A. Yes, he was responsible. Q. And in accepting that responsibility it saved the company the expense of building a tool-shed or a place to lock those tools up on an outlying job outside the plant, is that true? A. Well, yes. Q. Or in lieu of that in sending out a company truck to pick up the tools after work, is that right? A. He is still responsible for the tools."

The employee, Adair, when asked if he knew of the contract provision that "No employee of the company shall be required, as a condition of his employment, to furnish an automobile for the transportation of the company tools," testified, "I don't know whether the rule existed, positively, or not. I did know if a man did not want to carry the tools he did not have to, but whether or not that would mean the loss of his job, I don't know."

Appellant urges that the responsibility imposed on Adair for the safekeeping of the company tools carried with it, of necessity, the transporting of these tools in his automobile;

that the keeping of the tools in his automobile constituted a direct and substantial benefit to the employer. Appellant relies upon three cases, *Tarasco* v. *Moyers*, 81 Cal.App.2d 804 [185 P.2d 86], *Robinson* v. *George*, 16 Cal.2d 238 [105 P.2d 914], and *Loper* v. *Morrison*, 23 Cal.2d 600 [145 P.2d 1], in support of his contention that Adair, at the time of the accident, was traveling upon the highway in performance of a service for his employer and should therefore be deemed to be acting in the course and scope of his employment, even though he was then engaged in the purely personal business of returning home. None of the cited cases go to the extreme contended for by appellant under the facts presented here. *Tarasco* v. *Moyers, supra,* involved a farm hand who was required to return his tools each evening to the headquarters of his employer rather than leave them in the field, and who was furnished a residence at his employer's headquarters as part of his compensation. It was held that the employee was actually engaged in performing a part of his duties of employment in going to his allotted residence and in returning the tools. The servant was carrying the tools to a storage place as part of his job, and in returning to his allotted residence on the employer's premises he was performing an act incidental to his employment under the recognized "bunkhouse rule." *Robinson* v. *George* involved an exception known as the "special errand" rule, and in *Loper* v. *Morrison* the question was whether the employee had so far deviated from his route on a mission of his own as to indicate an abandonment of his employment.

As stated in *Loper* v. *Morrison, supra,* at page 605, in deciding cases of this type the results reached in other decisions are helpful but not necessarily controlling, and "In each case involving scope of employment all of the relevant circumstances must be considered and weighed in relation to one another."

Giving to plaintiff's evidence all the value to which it is legally entitled and indulging in every legitimate inference which may be drawn therefrom in his favor, it nevertheless appears that under no possible view of the evidence could a verdict against the employer be supported. It is undisputed that at the time of the accident the employee had completed his day's work, had paid a social visit to the home of his foreman, and was on his way to his own home. While the safekeeping of the tools was a benefit to the employer and in

furtherance of the employer's business, the operation of the vehicle upon the highway at the time of the accident was wholly without the scope of the employment. The logic of appellant's position would require that the employer be held responsible for all acts of the employee in driving for his own purposes on Saturday, over the week end, and until he had removed the tools from his car. The transportation of the tools was a mere collateral incident to the purpose of the employee in transporting himself to his home, had no causal connection, direct or indirect, with the happening of the accident, and affords no ground, in logic or justice, for holding the employer liable. True, the purpose of putting the tools in the car was to safeguard them for the employer, but the sole purpose of the employee in making the trip he was making at the time of the accident was to benefit himself. It cannot be said that the purpose of serving the employer's business actuated the employee to any appreciable extent or at all. For authorities which in analogous situations support the views here expressed see *S. & W. Const. Co.* v. *Bugge*, 194 Miss. 822 [13 So.2d 645, 146 A.L.R. 1190], and annotation in 146 A.L.R. 1193.

The judgment is affirmed.

Doran, J., and Drapeau, J., concurred.

A petition for a rehearing was denied May 27, 1949, and appellant's petition for a hearing by the Supreme Court was denied July 7, 1949. Carter, J., voted for a hearing.