## PENNEBAKER *v.* PARKER

No. 40661          February 10, 1958          100 So. 2d 363

*Roger C. Landrum,* Columbus; *Thos. J. Tubb, Harvey Buck,* West Point, for appellant.

*Carter & Van Every,* Columbus, for appellee.

LEE, J.

Hubert P. Parker sued F. E. Pennebaker, doing business as Pennebaker's Ready-Mix Concrete Plant, and George Lee Spraggins to recover damages for personal injuries alleged to have been sustained as a result of the negligence of the defendants. There was a verdict for the plaintiff in the sum of $12,000, and the defendants appealed.

The declaration charged that Spraggins, about 4:30 P. M. on March 19, 1956, in the employ of Pennebaker, about his duties as such, within the scope of his authority, and in furtherance of his master's business, while driving his master's truck, heavily loaded with gravel, along Military Road in the City of Columbus, in a careless, reckless and grossly negligent manner, ran into the back of the car which Parker was driving and seriously injured him. Both actual and punitive damages were demanded.

The defendants filed a joint answer in which they admitted that Spraggins, at the time, was in the employment of Pennebaker, was about his duties as such, was in the scope of his authority, and was in the furtherance of his employer's business. They denied the material allegations of the bill as to negligence, and averred that the proximate cause of the collision was the negligence of Parker in suddenly stopping his automobile in front of the truck without notice.

About a week later, they filed a motion for permission to withdraw their original answer and file another in lieu thereof, or for permission to file an amended answer. The order of the court granted them leave to file an amended answer. This they thereafter did separately, in each instance admitting Spraggins' employment, but denying that he was, at the time of the collision, acting within the scope of his authority or in the furtherance of his employer's business. The amended answers likewise denied the substantial allegations of the declaration and averred negligence on the part of Parker to the same effect as alleged in the original answer.

Parker testified that, about 4:30 in the afternoon on this occasion, as he was driving his Buick automobile, accompanied by his wife and son, James, along Military Road in the City of Columbus at a speed of about 15 miles an hour, on his way home, his car was struck a severe blow from behind and knocked 18 or 20 feet up the street. He did not even know at the time that a vehicle was behind him, and at first thought that an airplane had fallen on the car. He opened the door and put one foot on the ground when he was struck a second time and knocked 6 or 8 feet farther. This blow threw him back into the car. He then got his foot on the brake and stopped, at which time his car was struck the third time and the bumpers of the two vehicles locked together. The crashing vehicle was a truck, driven by Spraggins, and loaded with wet gravel. Spraggins got out of the truck, tried to apolo-

gize, and said, ''I hit you. I was just driving too close to you. It was my fault. I will pay for it.'' Mrs. Parker and James gave corroboration of the version of their husband and father as to the speed of the car, the suddenness and severity of the crash from behind, his attempt to alight from the car, and the two subsequent licks. When Dennis Cross, a highway patrolman, arrived at the scene a few minutes later, the bumpers were still locked. Upon inquiry of Spraggins as to what caused the collision, his reply was, ''Boss, I don't know. I looked off and when I looked back I had done hit.'' There were no skid marks.

Spraggins testified that he was following about half of a car length behind. All at once the car stopped without a light or signal of any kind. He denied that his truck hit the car three times or that he knocked it anywhere. He also denied that he told Cross that he was not looking and did not see the car until he hit it. He admitted that he had a load of about five yards of wet gravel.

Pennebaker, who operated his business in West Point, sent his truck, driven by Spraggins, to obtain gravel from a pit south of Columbus. Spraggins had already made three trips that day, in each instance going south on Highway 45 to the intersection of Highway 82, thence east into Columbus and south along certain city streets to the pit. He had returned by the same route. On his fourth trip, he obtained his load at the pit but did not follow his previous route. On the contrary, at the time of the wreck, he was north and east of that route. He testified that he had the right and discretion to select his routes and could go any way that he wanted to take. He admitted that he told different people that he was following the route on this occasion to get his wife, who was visiting a relative on the Blue Cut Road, and to avoid the heavy traffic on the other route. On the stand, he said that it was his purpose, after getting his wife, to cut back onto Highway 82 and then onto Highway 45, and north to West Point.

Parker testified that Spraggins told him at the time that he was driving Mr. Pennebaker's truck and that he had a load of gravel and was going to West Point, and that he was going to get his wife and take her with him. Cross, the patrolman, testified that, when Spraggins said that he was on his way to West Point, he asked if he was going by Waverly, and that Spraggins replied, "Yes, sir, I am going to pick up my wife." There is a ferry at Waverly and this route is direct to West Point. At 4:30 in the afternoon, traffic on the city streets was heavy.

Pennebaker testified that he designated the routes to be followed and told Spraggins how and where to go; and that Spraggins was mistaken when he testified that he had the discretion, after he left the plant, to pick his route as he wanted.

Appellant Pennebaker contends here that he was entitled to a directed verdict in his favor, because, at the time of the collision, Spraggins had forsaken his master's business and was pursuing a mission personal to himself and on a route wholly different from what he had previously used. He cites a number of cases including Lovett Motor Company v. Walley, 217 Miss. 384, 64 So. 2d 370; Stovall v. Jepsen, 195 Miss. 115, 13 So. 2d 229; Kramer Service, Inc., v. Robinson, 201 Miss. 805, 29 So. 2d 456; International Shoe Co. v. Harrison, 217 Miss. 152, 63 So. 2d 837; Simmons v. James, 210 Miss. 515, 49 So. 2d 839.

The trouble is that, in the authorities cited, the factual situation was different from that which existed in this case. Here admittedly Spraggins, at the time when he ran into the Parker car, was an employee of Pennebaker, in Pennebaker's truck, with Pennebaker's gravel for delivery at Pennebaker's place of business in West Point. He said that he had the right to select his route. His master denied that. This dispute made an issue for the jury. It was also shown that Spraggins said im-

mediately after the collision that he was on his way to West Point by Waverly. He admitted that he chose that route in order to get his wife and he told different people that it was also to avoid the heavy traffic. He also said that it was his purpose to intersect Highway 82 and get back on Highway 45 and go into West Point.

In Eagle Motor Lines, Inc., v. Mitchell, 223 Miss. 398, 78 So. 2d 482, the question was whether or not Burnham, a regular driver for the appellant, had, on the occasion of his tortious act, deviated from his duty and was at the time on a mission purely personal to himself. The opinion collated authorities, which recognize the general rule. The substance of that rule is that, where the offending motor vehicle of the defendant is being driven by one of his regular employees, it is presumed that such driver is engaged in the line of his appointed duties and in the furtherance of his employer's business; and, if responsibility for the tortious act of such employee is denied, the burden is on the employer to prove that the employee has abandoned the duties of his employment, and has gone about some purpose of his own in which the employer's business is not concerned and which is not incident to his employment; and, where the evidence leaves this question in doubt, the issue must be submitted to the jury. In that case, although Burnham, at the time was not driving toward Birmingham, his destination, it was held that the issue was properly submitted to the jury.

In the case of Colotta v. Phillips, (Miss.), 85 So. 2d 574, Moon, the servant, driving Colotta's truck, had made deliveries of produce and had returned to the City of Indianola in which Colotta's place of business was located. He had reached a point within a block of such place of business, but instead of proceeding thereto, where it was necessary for him to account for the money collected and to leave the truck, in order to find out what his wife wanted for supper, he continued on a route to

his home, which was approximately six blocks from the place of business. As he turned to the left side of the street in order to park in front of his home he ran into and injured Phillips. The opinion cited Eagle Motor Lines, Inc., v. Mitchell, supra, to show that Moon was presumed to have been engaged at the time in the scope of his employment; that the burden was upon the master to prove that Moon had abandoned the duties of his employment and had gone about some purpose exclusively his own which was not incidental to his employment; and that where the evidence leaves this question in doubt the issue must be presented to the jury. 57 C. J. S., Master and Servant, Sec. 574d, pp. 327-8, 35 Am. Jur., Master and Servant, Sec. 556, pp. 990-1, and a quotation from a Connecticut case, recognized in Barmore v. Railway Company, 85 Miss. 426, 38 So. 210, as quoted from in Southern Bell Tel. & Tel. Co. v. Quick, 167 Miss. 438, 149 So. 107, were cited as authority for the principle which controlled in that case. Consequently it was said that: ''It was a question of fact for the jury as to whether this was such a slight deviation that he was still in the scope of employment, or whether it was such an entire departure as to remove him therefrom.''

The jury on the disputed issue, (1) could have reasonably found that Spraggins had the right to select his route and that he was actually going by Waverly, a direct route to West Point; or (2) that he chose the way he was going for two reasons, namely, to get his wife and to avoid heavy traffic on the route which he had previously used, and that he intended to get back on his usual route at a different point, thus involving a motive partly for his own interest and partly for the interest of his employer. Cf. Primos v. Gulfport Laundry and Cleaning Co., 157 Miss. 770, 128 So. 507.

After all, while the route which he used may be said, under (2) supra, to have been in a measure circuitous, Spraggins had not completed his duties to his master,

namely, to deliver the gravel to West Point. If there was a deviation in the route, beyond doubt, there was no abandonment of the master's service. Cf. Barmore v. Railway Co., supra. Manifestly the requested peremptory instruction was properly refused.

■■ ■ The court refused an instruction on punitive damages, requested by the plaintiff, and gave an instruction requested by the defendants, that the jury could not award punitive damages. Appellants contend that evidence of financial worth, brought out on cross-examination of Pennebaker, was inadmissible and constituted reversible error.

Under the appellee's proof, there is serious doubt that the court should have refused him an instruction on the right of the jury to award punitive damages. At any rate, this is not an instance where it can be said that, "There is no basis for even a suspicion that the defendant would be liable for puitive damages," as was said in Jones v. Carter, 192 Miss. 603, 7 So. 2d 519. In no event would the admission of this evidence justify a new trial.

■■ ■ Appellee's counsel questioned Pennebaker, on cross-examination, without objection, as to the first and amended answers. The witness said that he could not explain why he filed the original answer in which it was admitted that Spraggins, at the time, was in his employment and in furtherance of his business. In the argument before the jury, counsel for the appellee took the defendants to task for the change in their defense. Counsel for the appellant objected to this argument, but the objection was overruled. The court granted a special bill of exceptions with this explanation: The original answer was admitted as going to the credibility of the defendants, and the attorney for the defendants, in his argument, referred to both answers, exhibited them to the jury, and stated that he represented both defendants, and that, as attorney, he filed them. The appel-

lants say that the court was in error in admitting the original answer and in overruling their objections.

The original answer was not stricken. It was merely amended. It was necessary to refer to the original in order to see wherein the amended answer had made a change. The pleadings shape the issues in a case. They are a part of the record and do not have to be introduced in evidence in this jurisdiction. The argument about the difference in the two answers was legitimate comment, and error cannot be predicated thereon.

Appellants also complain that the verdict is excessive.

■■ Parker was considerably shaken up as a result of the collision. According to his testimony, Pennebaker suggested that he see a doctor, which he did. Two days later he also went to see Dr. E. S. Thomas when he was complaining of pain. The doctor got a history of the case, examined him and has been treating him since. He diagnosed the trouble as a slipped vertebra or herniated disc. The patient's condition became worse and the doctor sent him to Memphis for treatment by a specialist. Dr. Thomas was of the opinion that it would be necessary for Parker to undergo a major operation, the cost of which, for medical fees and hospital expenses, will aggregate $1,300 to $1,400. The disabling period will approximate four to six months, and the operation may not be successful. At the time of the trial Dr. Thomas rated Parker's disability at 45 percent. Before his injury, Parker was healthy and earned $50 to $55 a week. Since the injury, he has suffered much pain, and has had to take medication for relief, and has had to take an easier job, for which he earned $40 per week. At the time of the trial he had already spent $275 for doctors' bills. He described the property damage to his automobile, but the same had not been fully repaired. The injury in this case is somewhat similar to that shown in the case of Arnold v. Ellis, (Miss.) 97 So. 2d 744, wherein a verdict of $15,000 was held not to be excessive.

After a thorough examination of the record in the present case, there is no substantial basis upon which the amount of the verdict can be held to be excessive.

No reversible error appears in the record and the cause is therefore affirmed.

Affirmed.

*McGehee, C. J.,* and *Hall, Kyle* and *Holmes, JJ.,* concur.