Hazel **WEAKLEY**, Plaintiff,

v.

**SOUTHWESTERN BELL TELEPHONE COMPANY**, a foreign corporation, Defendant.

Civ. No. 64–352.

United States District Court
W. D. Oklahoma.

April 27, 1965.

Howard K. Berry, Jr., Oklahoma City, Okl., for plaintiff.

Quinlan, Allen & Batchelor, Oklahoma City, Okl., for defendant.

DAUGHERTY, District Judge.

Plaintiff sues the defendant for personal injuries, loss of wages and medical expenses, resulting from a rear-end type collision at an intersection in Oklahoma City between the front car driven by the plaintiff and the rear vehicle, a truck owned by the defendant and driven by one of its employees. Plaintiff's right to damages against the defendant herein is based on the doctrine of respondeat superior.

The evidence establishes negligence on the part of the driver of the rear vehicle consisting of a failure to exercise ordinary care to maintain a proper lookout ahead and to maintain proper control over the movements of his vehicle. The plaintiff had been stopped at a red light prior to being hit in the rear by defendant's vehicle. The defendant defends on the basis that the driver of its vehicle was not acting as its agent or servant at the time and place of the accident. A jury was waived by the parties and the case tried to the Court.

This collision occurred about 5:45 P.M. on Saturday, September 28, 1963. The rear vehicle was a truck owned by the defendant and driven by one Joseph Kraker, Jr., one of its regular employees with the job classification of station installer (of telephones). Following the accident, the said Kraker gave a false name, address and telephone number to the plaintiff, and did not render a report of the accident to the defendant as required by Company procedure. This case was filed on June 1, 1964. In July of 1964, the said Kraker voluntarily admitted the accident to his employer, the defendant. He was thereupon disciplined (suspended for two weeks without pay) by the defendant for driving a Company vehicle without authority after his tour of duty.

It appears from the evidence that the said Kraker was employed by defendant as a station installer during the month of September, 1963, and assigned to the Victor work center, which serviced a specific geographic territory in the Oklahoma City area. His regular working hours were from 8 o'clock A.M. until 4:30 o'clock P.M. with one-half hour for lunch. He was regularly assigned the truck which he was driving at the time of the collision involved herein and was required to keep the same at the Victor work center when he was not using the same in his work. It seems that one Wilma Howard was a friend of the said Kraker and on Friday evening, September 27, 1963, called the said Kraker at his home advising him that she had that day placed a removal order on her telephone with the defendant Company but had been advised that the same could not be moved or installed at her new location until the following Monday. The said Kraker agreed to assist her by moving the phone on Saturday.

The evidence discloses that removal orders on telephones are assigned by a central assignment office of defendant, which receives said orders and then assigns them to the appropriate work center, at which work center a further assignment to a station installer is made by the installation foreman for said work center. The Wilma Howard removal was not in the territory of the Victor work center but was situated in the territory of another work center. On occasion a specific service order (such as a removal) may be assigned to a different work center than the one in which the installation is situated, this being done by the central assignment office. The Wilma Howard service order does not appear to have been assigned at any time to the Victor work center but to its regular work center, the same being another work center. It further appears from the evidence that station installers are not authorized overtime except by direction of the work center installation foreman, a management employee, or the test center dispatcher. Each station installer is required to submit a daily work report. This report shows service orders handled by number and the total hours worked. The daily work report of the said Kraker for September 28, 1963, the date of the accident, does not show the Wilma Howard service order and re-

veals the regular eight hours of work with no overtime.

It is the testimony of Kraker that he failed to remember his telephone conversation with and promise to Wilma Howard until after he had finished his eight-hour tour and had filed his daily work report for September 28th; that he stayed at the Victor work center for some 45 minutes after his tour of duty was completed and he had filed his daily work report and then, remembering his promise to Wilma Howard, he left the Victor work center in his regular truck with its equipment and with his personal equipment about 5:20 P.M. and proceeded to the new residence of Wilma Howard for the purpose of installing her phone, having the accident involved herein enroute thereto; that he had not been assigned the Wilma Howard service order; that sometime during the day of Saturday, September 28th, during his regular tour he had called the service center compilation clerk and stated that he wanted to make the Wilma Howard installation; that the compilation clerk gave him the new telephone number and the address of Wilma Howard and certain technical information as to the installation; that the compilation clerk did not advise Kraker that the Wilma Howard service order had been regularly assigned to J. K. Bowden; that after the accident he proceeded to the Wilma Howard residence, found her not to be home, climbed a telephone pole near the residence to make the installation, made a certain connection, but was not able to complete the installation because the Windsor Exchange Central Office could not be reached on his telephone, which was necessary in order to complete the installation. He then left the area and returned the defendant's truck to the Victor work center. The Wilma Howard installation was made on Monday, September 30th, by one J. K. Bowden, a station installer of another work center to whom the Wilma Howard work order had been assigned.

In her testimony in chief, the plaintiff established the accident, that the vehicle striking her car from the rear was driven by Kraker and then by the testimony of Kraker, called as a witness by the plaintiff, established that he was driving a truck belonging to the defendant at the time of the accident and that he was a regular employee of the defendant. Defendant, at the close of plaintiff's evidence moved to dismiss for the reason that the evidence failed to show the fact or scope of Kraker's employment by the defendant. This motion was denied by the Court. Defendant in its brief still complains of this action by the Court. The denial of said motion appears to be fully supported by the case of Stumpf v. Montgomery, 101 Okl. 257, 226 P. 65, 32 A.L.R. 1490, which provides in syllabus 3 by the Court:

"Evidence of defendant's ownership of the car, coupled with proof that the driver was in his employment, raises the legal presumption that, at the time of the accident, the driver was acting for the owner and within the scope of his employment, and the burden of proof is then placed on the defendant to prove that, at the time of the accident, the driver was not acting for him, but was using the machine for his own purposes or outside the scope of the employment."

Also see De Camp v. Comerford, 134 Okl. 145, 272 P. 475.

Kraker was a proper witness to testify at the trial to the fact of his regular employment by defendant and defendant's ownership of the vehicle he was driving. 3 Am.Jur.2d, Section 353, Agency, Page 711.

The Code of Business Conduct of the defendant, which the said Kraker acknowledged reading on November 28, 1960, provides:

"Company materials, veheicles, telephone sets or other equipment, tools, or other property must not be used, taken, or concealed for unauthorized personal purposes or for other unauthorized use. * * *"

"Telephone equipment must not be installed, moved, rearranged or re-

moved unless covered by an authorized service or maintenance order, or other specific authorization."

■ A consideration of the Company rules, as above set out, and the conduct of Kraker regarding the Wilma Howard service order, as above set out, results in the conclusion that Kraker violated certain Company rules in taking the Company truck as he did, followed by his attempt to effect the installation of the Wilma Howard telephone. The giving of false information to the plaintiff following the accident and failing to report the accident to his employer supports the conclusion that Kraker was knowingly violating the rules of his Company at the time of the accident. However, the violation of a company rule by an employee, standing alone, will not in and of itself prevent the application of the doctrine of respondeat superior in all situations. 35 Am.Jur., Master and Servant, Section 559, at Page 993 reads as follows:

"The courts are generally agreed that an employer may be held accountable for the wrongful act of his employee committed while acting in his employer's business and within the scope of his employment, although he had no knowledge thereof, or had disapproved it, or even expressly forbidden it. Also, as a general rule, an employer is liable for acts of his employee within the scope of the latter's employment notwithstanding such acts are done in violation of rules, orders, or instructions of the employer."

Inasmuch as the violation of a company rule or rules by an employee will not be necessarily absolve the employer from liability under the doctrine of respondeat superior, the Court will proceed to a consideration of the matter of "scope of employment" as to Kraker with reference to the attempted installation of the Wilma Howard telephone in the light of the Company rules violated, the matter of the personal motive of Kraker in attempting to make the installation, the character of Kraker's employment,

the nature of the wrongful act, the ownership of the instrumentality by means of which Kraker inflicted the injury, the manner in which the same was furnished and entrusted to Kraker, the time and place of the wrongful act, the purpose of the act, whether the act is one commonly or usually done by employees engaged in similar capacities, whether the defendant had reason to expect that an act of the character complained of would be committed by an employee, and all of the other circumstances present.

As a backdrop for this problem, the following from 35 Am.Jur., Pages 986, 987, is pertinent:

"There is no formula that will solve the problem whether, at a particular moment, a particular servant is engaged in his master's business, or is acting within the scope of his employment, so as to render the master liable for his acts. This is ordinarily a question for the jury where the evidence is conflicting, although the court may determine the question where there is no conflict in the evidence.

"If the injurious act was outside the scope of the wrongdoer's employment, the employer is not to be held liable merely on proof that the injury was done with an instrumentality which had been intrusted to the employee by the defendant. The liability of the latter depends not on the showing as to whether the wrongdoer was using his instrumentality, but as to whether it was being used in furtherance of his business.

"#553. Meaning of 'Scope of Employment.'—Acts impliedly authorized or such as are within the 'scope of the employment'—that is, wrongs for which the employer may be held accountable—are said not to be susceptible of precise or even very helpful definition by any phrase or short form of expression. In practically every case the authority from the master is to be gathered from and determined by the surrounding facts and circumstances—the char-

acter of the employment and the nature of the wrongful act. Among the many factors to be taken into consideration may be mentioned the employer's ownership of the instrumentality by means of which the employee inflicted the injury and the fact that it was furnished to the employee by the employer, although the mere intrusting of an instrumentality to the employee by means of which he commits a tort is not of itself, unless the instrumentality is one classed as a dangerous instrumentality, sufficient to establish vicarious liability. Other factors to be considered are the time at which the wrongful act was done—whether at a time when the employee was not obligated to perform any duty for the employer, in which case the latter is not ordinarily to be held responsible—the place at which the wrongful act was done, the purpose of the act, the personal motive of the employee, whether the act is one commonly or usually done by employees engaged in similar capacities, or whether the employer had reason to expect that an act of the character complained of would be committed by the employee.

"A servant is acting within the scope of his employment when he is engaged in doing for his master what he has been directed to do, or, as it has been said, 'any act which can fairly and reasonably be deemed to be an ordinary and natural incident or attribute of that act, or a natural, direct, and logical result of it' is within the meaning of the phrase 'scope of employment.' The test is the nature of the tortious act and its relation or nonrelation to that which the actor was employed to do. If the employee, being engaged about the business of the employer, adopts methods which he deems necessary, expedient, or convenient, and the methods adopted prove hurtful to others, the employer may be held liable. The purpose of the em-

ployee's act, rather than the method of performance thereof, is said to be the important consideration."

Those facts or circumstances which would seem to support "scope of employment" herein as to Kraker, are: Kraker was employed by the defendant to install its telephones; Kraker was on his way in one of defendant's vehicles to install one of defendant's telephones for one of defendant's customers who desired the same installed, and Kraker called the compilation clerk of the defendant requesting to do the installation and obtained from such clerk the needed information for the installation.

Those facts or circumstances present which would seem to refute "scope of employment" herein as to Kraker, are: Kraker violated certain Company rules in going outside his regular territory, in not having a service order for the installation, in working overtime without authority to do so, and using a Company vehicle after his tour of duty for the defendant was ended, and such personal motive as he may have had in relation to Wilma Howard. In connection with the matter of a personal motive, the evidence is scant except for the call of Wilma Howard to Kraker and his promise to make the installation on Saturday. The evidence simply reveals that Wilma Howard was a friend or acquaintance of Kraker and called him about the removal of her telephone since this was his type of work for the defendant. There is no evidence of a planned meeting, social or otherwise, between the two, or any other consideration. In fact Wilma Howard was not at her new residence when Kraker attempted to install her new phone.

It, therefore, appears that the Court is confronted herein with a type of deviation or departure by Kraker from the routine method of accomplishing his work for the defendant in respect to the attempted Wilma Howard telephone installation. In this regard, 35 Am.Jur., at Page 989, states:

"555. Deviation or Departure from Master's Business for Own

**Pleasure or Business.**—One of the most difficult problems in determining the liability of an employer for the acts of his employee arises where the employee at the time of the injurious occurrence had deviated from the usual course which his duties required him to take for some purpose of his own. While the mere fact that the employee was at the time of the injury combining his own business or pleasure with the business of the master does not necessarily relieve the master from liability, it is clear that an employer's liability is not to be determined by the fact that the wrongful act of his employee was committed during the employee's working hours or before the task to which he had been especially assigned was finished. The test of the liability of the employer is whether at the very time of the injurious occurrence, the employee was performing some act in furtherance of his master's business, as well as an act in his own interest."

In this posture, it thus appears that the Court is dealing with a matter of degree. Since Kraker was a telephone installer for the defendant and was on his way, in one of defendant's vehicles, to install one of defendant's telephones for one of its customers, who wanted the same installed, this state of facts and circumstances must be weighed against the deviation or departure facts and circumstances involved and a possible personal motive, all as set out above, to determine the issue of "scope of employment" by Kraker at the time of the accident with plaintiff. In dealing with this difficult problem, 35 Am.Jur. at Pages 990, 991 states:

"556. —What Constitutes.— Generally, it may be said that in order for an employer to escape liability for an act of his employee on the ground of the latter's deviation or departure from the employer's business for a purpose of his own, it must be made to appear that the employee abandoned and turned aside completely from the employer's business, to engage in some purpose wholly his own, for it is not every deviation from the direct line of his duties on the part of an employee that constitutes a turning aside from and an abandonment of his master's business. A slight deviation by an employee in charge of his employer's vehicle, for his own purposes, when he is on business for his master does not affect the liability of the master. As has been said, there is an area, beyond and around the place within which the strict terms of the employment require the servant to remain, into which common experience with, and observation of, human nature suggest that he will, as inclination dictates, probably go, this is a risk which properly belongs to the business, and injury to the public by the servant while within this area should ordinarily be accepted as a burden upon the industry itself. It is only where the employee has, for purposes of his own, departed so far from the line of his duty that for the time being his acts constitute an abandonment of his service, that the employer is not liable. Whether the extent of his departure from the scope of his employment, or the area of his service, was so unreasonable as to make his act of deviation an independent journey of his own, rather than a mere detour or one incidental to his employment, is a question of degree which depends on the facts of the case and is a matter for the determination of the jury, unless the deviation is so great, or the conduct so extreme, as to take the servant outside the scope of his employment and make his conduct a complete departure from the business of the master. When the deviation and its purpose are not in dispute, and it appears beyond reasonable controversy that the purpose had no connection with the duties of the servant, there is no liability, and it is

the duty of the court to dismiss the action or direct a verdict, or, if a verdict has been rendered in favor of the plaintiff, to set it aside on motion. On the other hand, in cases where the deviation is slight and not unusual, the court may, and often will, as a matter of law, determine that the servant was still executing his master's business. Cases falling between these extremes will be regarded as involving merely a question of fact, to be left to the jury or other trier of such questions."

The Oklahoma Supreme Court has followed the above reasoning in several cases. In Lee v. Pierce, 112 Okl. 212, 239 P. 989, the following is quoted with approval from an earlier case:

"'The question in every case is whether the act he was doing was one in prosecution of his master's business. * * * If the act was one which, continued until the termination, would have resulted in carrying out the object for which the servant had been employed, the master would be liable for whatever negligence might take place during its performance, although the servant in doing it was not obeying the instructions of the master, or although he had deviated from the route prescribed by the master for the purpose of doing some act of his own, but yet with the intention, at the same time of pursuing his master's business.'"

In Brayton v. Carter, 196 Okl. 125, 163 P.2d 960, it was held:

"In general it may be said that an act is within the course of employment if (1) it be something fairly and naturally incident to the business, and if (2) it be done while the servant was employed upon the master's business, and be done, although mistakenly or ill advisedly, with a view to further the master's business, or from some impulse of emotion which naturally grew out of or was incident to the attempt to perform the master's business, and did not arise *wholly* from some external, independent, and personal motive on the part of the servant to do the act upon his own account." (Emphasis ours).

■ Under the evidence, the personal motive herein standing alone would not appear to prevent Kraker from being within the scope of his employment for defendant. In S. & W. Construction Co. v. Bugge, 194 Miss. 822, 13 So.2d 645, 146 A.L.R. 1190, it has been held as follows:

"In such cases as last mentioned the rule to be applied is found in Primos v. Gulfport Laundry & Cleaning Co., 157 Miss. 770, 128 So. 507, 509, where the alleged servant was engaged at the time partly in purposes of his own and partly in the furtherance of the business of his employer and within the range of his appointed duties, and there the rule was announced, quoting from the comment under Section 236, A.L.I. Rest. Agency, that 'the fact that the predominant motive of the servant is to benefit himself or a third person, does not prevent the act from being in the scope of employment. If the purpose of serving the master's business actuates the servant to any appreciable extent, the master is liable if the act otherwise is within the service.'

"It is not necessary here for us to undertake to define more precisely what is required to be shown in order that the extent of the actuation may be considered as appreciable; it is enough here to say that it must be more than that which is merely technical, or suppositional, or argumentative,—it must amount to more than a scintilla. Compare Shell Petroleum Corp. v. Kennedy, 167 Miss. 305, 312, 141 So. 335."

■ It is fair to say, and the Court finds herein, that Kraker was actuated to an appreciable extent and, in fact predominantly, to serve and further the defendant's business by his attempt to install the telephone of Wilma Howard.

With reference to his violating the Company rules, as heretofore discussed, it is noteworthy that he was not disciplined by the defendant for going outside his regular territory or not having a service order for the Wilma Howard installation or for working overtime without authority to do so. He was disciplined for driving a Company vehicle without authority after his tour of duty. This disciplinary action by the defendant should have some bearing on the seriousness with which they treated his several violations of Company rules as related to a deviation or departure by Kraker from prescribed Company methods and procedures in the installation of its telephones. Apparently these violations did not warrant mention in the disciplinary action taken. With reference to the violation of the Company rule in driving a Company vehicle without authority after his tour of duty, it has been held that where the vehicle was taken or used *primarily* or solely for the employer's business purposes, the employee may be found to have been within the scope of his employment even though there was evidence that the use of the vehicle was not authorized. 8 Am.Jur.2d, Page 181; 51 A.L.R.2d, Sec. 12, Page 156.

From a consideration of all the foregoing, the Court, as the trier of the facts, holds that Kraker at the time and place of the accident involved herein, must be deemed to have been acting within the scope of his employment with the defendant, and the defendant, therefore, is responsible for the consequences of the accident herein under the doctrine of respondeat superior. The Court will be the first to admit that this is a close and difficult decision. After most careful research and full consideration, however, the Court makes the foregoing factual decision, realizing that there are views and arguments to the contrary.

Now turning to the matter of damages and losses sustained by the plaintiff as a result of the collision. The medical diagnosis regarding the plaintiff's personal injuries was a ligament and muscle strain in the neck resulting in nerve root pressure in that area causing numbness in the right arm and hand. Plaintiff was hospitalized for 18 days in traction. She received sedation. She wore a neck collar after hospitalization. Her doctor testified she was fully recovered. There is no permanent disability. Plaintiff had experienced a previous difficulty of this same nature resulting in numbness in the left shouder, arm and hand, but it appears from the medical testimony that she recovered fully from this previous difficulty before the accident herein, being discharged for said previous difficulty by her doctor on July 19, 1963. It does not appear from the evidence that a pre-existing arthritic condition was aggravated by the collision herein or that a cervical abnormality demonstrated by x-rays before and after the accident is involved. Her drug bills amounted to $25.00, her hospital expenses $442.30, and her doctor bills were $185.00, for a total medical expense of $652.30. Plaintiff also sued for loss of wages as a result of the accident. She was off work from November 11, 1963 to June 6, 1964, for a total of 29 weeks. Her wages were $40.00 per week. The loss of wages, therefore, amounted to $1,160.00. She also sued for pain and suffering, for which the Court awards the sum of $250.00. There was no evidence to support the allegations of future medical expense, and in view of her full recovery according to her own doctor, there is no permanent disability to form the basis of damages for such.

Accordingly, judgment should be entered herein for the plaintiff and against the defendant for the sum of $2,062.30. Counsel for plaintiff will prepare a judgment in conformity with the foregoing and submit same to the Court after approval by counsel for defendant as to form. Five (5) days are allowed for this purpose.