NAGY *v.* KANGESSER, D. B. A. THE K. B. Co.

528

(Decided June 4, 1928.)

*Messrs. Mooney, Roth & Pollack,* for plaintiff in error.

*Messrs. Dustin, McKeehan, Merrick, Arter & Stewart,* for defendant in error.

SULLIVAN, P. J. This cause is here on error proceedings from the court of common pleas of Cuyahoga county, wherein that court, at the close of the evidence for the plaintiff, Julia Nagy, sustained a motion on behalf of defendant for a directed verdict, on the theory that the doctrine of *respondeat superior* did not apply, under the undisputed facts in the record as they appeared at the time the motion was made and sustained.

The only question here to determine is whether this action of the court, upon which judgment for defendant was entered, is founded in error. From the facts in the record, it appears that plaintiff in error, Julia Nagy, was injured on June 8, 1925, in the city of Cleveland, before the hour of 8 a. m., at the corner of Rockwell avenue and east Sixth street, by an automobile driven by one Berg, who with

his wife were occupants of the car; Berg himself being en route to the place of business of defendant in error, where he was under employment as a collector, the terms of which employment being that during the hours between 8 a. m. and 5 p. m., while using his own automobile for that purpose, the one in which he was riding at the time of the accident, he was to act as collector for the defendant in error; and, under the terms of the agreement, if the circumstances were such that it was not feasible or possible for him to report before 5 p. m., and turn in the collections of money received, he was to retain the same and deposit them with the defendant in error the next morning, when he returned to work with his automobile, under the terms of his contract.

Preliminary to his employment, Berg had answered an advertisement of the defendant in error for employment of this character, embracing the use of a light machine in making his rounds throughout the city for the purpose of making collections. Each morning he would receive certain slips, which guided him in his employment, and upon his return in the evening he would deposit with the defendant in error these slips unless, as above noted, it became necessary to return the slips and make a deposit of the collections the next morning, when he resumed his employment.

On the morning when his automobile was the factor in the alleged accident to plaintiff in error, pursuant to the understanding and agreement with defendant in error, Berg was in possession of the funds collected in the course of his employment on the day preceding, which, for good and sufficient reasons, under the agreement, had not been reported

and turned in the night before, and it is argued that, even though the accident happened before the hour of 8 a. m., and while Berg was driving with his wife on his way to work, and in possession of the money collected the day before, the master, the defendant in error, is liable under the doctrine *respondeat superior,* because at the time of the accident Berg had this money in his possession and was performing his duty by proceeding to defendant in error's place of business not only for the purpose of resuming work, but to return the slips of the day before, to secure new ones, and to report and deposit the amount of collections.

Thus we have the facts in substance which appear of record, and which form a basis for the action of the court below in directing a verdict for the defendant in error, and analyzing the same we extract as a logical conclusion therefrom the fact that the injury happened prior to the morning hour at which the relationship of master and servant was to be resumed.

It is irrefutable that after 5 p. m. and before 8 a. m. of the following day there was no liability between the master and servant, because there was no business or contractual relationship existing between them, under the terms of the contract. The peculiar employment of Berg with his automobile was for the hours between 8 a. m. and 5 p. m. of each day, and 8 a. m. was the hour for arrival at the office, and 9 a. m. the hour for departure for the collections to be made by use of the automobile owned and controlled by the employee.

Now, inasmuch as the accident happened prior to 8 a. m., there could be no liability under the doctrine

of master and servant, because the employee was not an employee in the performance of any duty in behalf of the master, unless it can be said that the employee is on his master's business while he is en route to his work to perform his duties. This position obviously is not tenable under the authorities, because the master cannot be held liable unless the act in question is part of an actual duty connected with employment. It is argued by able counsel for plaintiff in error that the employee was performing a duty for the master, because he had in his possession at the time of the accident the slips and the money, which, under the terms of the contract, were to be returned to and deposited with the defendant in error at 8 a. m., the hour of the resumption of his duties under the general contract.

It is urged that therefore he was in the performance of his specific duty. What shatters this proposition, in our judgment, is the fact that the accident happened prior to 8 a. m., and while the employee was on his way to work. To hold the master liable because the money and slips were in the possession of the employee just prior to 8 a. m. exemplifies the doctrine of *reductio ad absurdum,* for the reason that under like logic the master would be liable at the preceding midnight for any injury occasioned by the employee. Numerous illustrations of this character might be made, showing how futile and illogical the status of such a claim. That the employee, at the time of the accident, had the automobile with him, does not strengthen the claim of plaintiff in error, because the distinct purpose in the use of the automobile at the time of the accident was to carry Berg, the employee, to his place of work, where he

was to report at 8 a. m., and after reporting, he, with his automobile, was to resume his duties at 9 a. m., one hour afterwards.

To hold the master liable because of the automobile and the possession of the money and slips, prior to 8 a. m., would not be based on merit or logic, because such a deduction and conclusion would hold the master liable under any other similar circumstances for any injurious act of the employee at any time between 5 p. m. and 8 a. m. of the succeeding day. Thus, it is obvious that to hold the master liable in the instant case would create a precedent which would result in extending the doctrine of *respondeat superior* to such an extreme that the courts would be compelled to take refuge in the sound principle of public policy in order to protect the principles governing the doctrine of master and servant or employer and employee.

Learned counsel for plaintiff in error, to support his contention, cites *Pickens & Plummer* v. *Diecker & Bro.*, 21 Ohio St., 212, where it was held, in an action to recover for the negligence of a traveling agent, who in the performance of his duties had to hire a team of horses and a buggy to go to a neighboring town for the purpose of performing the duties of his employment, and an injury resulted because of the fright of the horses, that the master was liable because in the hiring and use of the team the traveling man was the servant and agent of the master, and consequently the latter was liable for damages resulting from the former's negligence.

This case we do not think applicable to the case at bar, because the traveling agent, in hiring the team, was actually performing services for which

he was engaged, and therefore there can be no doubt that the master was liable for the negligent acts of the agent, but in the present case it is clear from the record that, inasmuch as employment did not commence until 8 a. m. and the accident happened prior thereto, while en route to work, the employee was not in the performance of a duty wherein the master was responsible, for the reason that the master's liability ceased at 5 p. m., and did not begin until 8 a. m. of the following morning. However, if we notice the opinion in *Pickens & Plummer* v. *Diecker & Bro., supra,* we will observe that the following language is used, which we think applies to the facts in the instant case:

"But when the person employed is in the exercise of an independent employment, and not under the immediate control, direction, or supervision of the employer, the latter is not liable for the negligence of the former."

In the case at bar the master did not have "immediate control, direction, or supervision of the employee" prior to 8 a. m., the hour when the contractual relationship was resumed.

A case, which in our judgment approves our analysis of the instant case, is *Gilmore* v. *Industrial Commission of Ohio,* 4 Ohio Abs., 486, 726. In that case, in the common pleas court, a verdict was directed for the defendant, and the same was afterwards affirmed by the Court of Appeals, and the Supreme Court refused a motion to certify. The prime fact in that case is that the principal of a high school, in order to perform his duties at home, was conveying certain school records for the purpose of preparing his duties for the coming week,

and while so doing was injured when driving home from school in an automobile.

It was held, and, in the manner above noted, approved by the Supreme Court, that the carrying home of the school records for the purpose above stated did not create a right of recovery. In other words, the doctrine of *respondeat superior* did not apply.

We find another authority which bears out, we think, our conclusion in the case at bar. 2 Berry on Automobiles (6 Ed.), Section 1324, reads in part: "An employer is not liable for the acts of his employee while the latter is on his way of a morning to report for duty" (citing *Nussbaum* v. *Traung L. & L. Co.*, 46 Cal. App., 561, 189 P., 728, 832).

In accord with this opinion, the court in the *Nussbaum case*, at page 571, 189 P., uses the following language, applicable to the case at bar: "If the rule be extended to hold the master liable for the negligent acts of a servant while on his way to report for duty in the morning, the master would also be liable for the negligent acts of the servant while preparing his dinner pail before leaving his home, because he is then preparing, or, in a sense, on his way, to report for duty; and also the master, under such a rule, would be liable for the negligent act of a servant from the time he arose from his bed in the morning in preparation to report for his day's duties. The statement of such a rule reduces it to an absurdity."

In *McKenzie* v. *Industrial Commission*, 24 Ohio App., 455, 155 N. E., 704, it was held: "Where employee of city was struck by automobile while on way to work within three blocks of place of employment

and within half hour of commencing work, resulting injury was not sustained in course of, and did not arise out of, employment.''

In reading the opinion of the court below in the present case, we are attracted to the analysis of the record at the time of the sustaining of the motion to direct, and for the purpose of throwing added light upon the discussion of the question at issue we are pleased to reproduce the following excerpt from the opinion of the court upon the ruling to which exception is made:

''I am not going to attempt to quote to you or attempt to analyze any of the authorities which have been cited, or attempt to quote anything that was said on that proposition, except to say that the authority cited by counsel for the plaintiff doesn't disclose such facts as would show that the act of this man was the act of the master or employer, or that it was the act of the employer that caused the injuries. That there was sufficient evidence as to just what the circumstances and conditions were, and what the servant was doing at the time—and where there is conflicting evidence on that question, as to what was being done and what the circumstances were, then, of course, there is no question that that is a question for the jury to determine; in other words, the duty of the court is to submit it to the jury, and then to let the jury determine what the fact is as to whether the act which caused the injury was the act for and on behalf of master by the servant at the time, under the proper instructions as to the law, but in this case there is no dispute, practically, as to what the facts are. The only difference in the testimony is that the defendant himself has testified

that, under the instructions under which Mr. Berg was working, he was to report in the morning at 8 o'clock, when he was given his instruction cards or collection slips; his work was laid out and he was to go to work and in the evening, at five o'clock, turn over the collections for the day, unless the circumstances were such that it was inconvenient or impossible for him to come in in the evening, when he would report in the next morning. Berg's testimony is that he was to report the next morning, and turn over his money that he collected the previous day. With the exception of that testimony, in the testimony produced by the plaintiff, there isn't any dispute in the testimony. So that taking the testimony, or taking all the facts of the case that the servant and employee, Mr. Berg, was to report in the morning for his instructions at 8 o'clock, and then start out on his work and return the collections of that day the next morning, instead of the day before, the question is whether or not from the time he ceases his labors on that day, anything that he does between that time and the next morning when he reports for work can be said to be the act of the employer or the act of the master and employer. I think that there can be no question but that, after Berg ceased his labors for the day, he was then what we might say his own boss from that time until he reported the next morning and started out on his day's labors for that day. There isn't any question but what, in the evening, after he quit work, he could use his automobile to go where he saw fit, yet he could have the money which he had collected that day with him, and until the next morning at eight o'clock, he could do as he liked and go where he

liked, and the defendant would have no control over him until he reported at the store at eight o'clock the next morning to be given cards for his day's labor.''

Holding the views we have here expressed, the judgment of the common pleas court is hereby affirmed.

*Judgment affirmed.*

VICKERY and LEVINE, JJ., concur.