HUMES *v.* YOUNG, et al.

Jan. 4, 1954

No. 39024          47 Adv. S. 14          69 So. 2d 245

*Riley & Johnson, Robt. L. Netterville,* Natchez, for appellant.

*Brandon, Brandon, Hornsby & Handy,* Natchez, for appellees.

McGEHEE, C. J.

This is a suit brought by the appellant, Odessa Humes, for damages caused by the death of her three-year-old son Harvey Barnes when he was alleged to have been struck by an automobile driven by the defendant Emmit Young, who was employed to work at the funeral home which was operated by the appellee, National Undertaking Company, Inc. on February 2, 1952. The principal duties of Emmit Young in and around the funeral home were that of assisting in the embalming operations and cleaning automobiles, washing windows, cleaning the floors and otherwise serving as a janitor at this place of business.

Both Emmit Young and M. L. Williams, the President of the National Undertaking Company, Inc. were introduced by the plaintiff as adverse witnesses. The testi-

mony of Emmit Young disclosed that his working hours were generally from 7 A. M. to 7 P. M. and that he had certain hours off from work, usually between 10 A. M. and 11:30 A. M. and again from 1 P. M. or 1:30 P. M. until approximately 3 P. M. to 3:30 P. M. The accident occurred some time between 2 P. M. and 3 P. M.

This employee had left the funeral home in his private automobile at approximately 1:30 P. M. or shortly prior thereto, had gone to his home where he ate lunch, and then started to go to his father's house to see his parents at this noon hour, and was thereupon requested by Bernice Singleton, a colored woman, to transport her in his car to the place of her employment at the Natchez Charity Hospital for the reason that it was raining. He complied with this request and while returning from the hospital and still intending to call at the home of his parents before returning to the funeral home he decided to again go to his own home for the purpose of getting a handkerchief, before driving on to the home of his father. It was while en route from the hospital to his own home that he killed the plaintiff's child with his automobile.

At the close of the plaintiff's evidence, the trial court instructed the jury peremptorily to find for the defendant, National Undertaking Company, Inc., and ordered the trial to proceed as against the defendant Emmit Young, and with the result that there was a jury verdict for the sum of $7,500 in favor of the plaintiff as against the defendant Emmit Young, and there is no appeal from the judgment entered thereon.

Certain partnerships and individuals, including M. L. Williams, were also made defendants to the suit and a verdict was directed in their favor at the close of the plaintiff's evidence, and there is no appeal from this action of the court. Therefore, since we are of the opinion that the evidence presented an issue for the jury as to the negligence of Emmit Young in the killing

of the child, the sole question presented to us on this appeal is whether or not he was acting within the scope of his employment and in furtherance of his duties as an employee of the National Undertaking Company, Inc. at the time of the accident in question.

The pleadings admit, and the proof discloses, that Emmit Young was employed by the appellee National Undertaking Company, Inc. in the capacity hereinbefore mentioned on the date of the accident. The proof relied on by the plaintiff to show that he was acting within the scope of his employment and about the duties thereof at the time of the accident is that Effie Cotton, an aunt of the deceased child, testified that when she arrived at the scene of the accident she saw Emmit Young with the boy in his arms and that he said to her "Let's get the baby to the hospital, * * * get in the car in a hurry * * * You know how Mr. Williams is when he sends you some place"; that she inquired as to why the boy was struck and that Emmit Young replied "You know how funny Mr. Williams is and he sent me back to get his embalming tools. He done set the box over on the back seat * * *"; and that "He had to move it from the front and put it in the back seat for me to get in;" and "When he throwed it back the top flew open." Q. "Did you see anything in the box?" A. "I saw a little silver like knife and when he (the other child, brother of the deceased who got in the car with them) saw the knife and picked the knife up and he (Emmit) told him to put the knife back down, that it was nothing to play with, it was an embalming knife," the theory of the plaintiff being that M. L. Williams, President of the National Undertaking Company, Inc. had told Emmit Young as he was leaving the funeral home to go and get the embalming tools, and that the said employee had either gone to the hospital or to his home for that purpose and had them in his car at the time of the accident, and for the purpose of taking them back to the funeral home.

In further support of the plaintiff's theory, she introduced one David Baldwin, whose nickname was "Sparkplug," and who testified that about 2:30 P. M. on the day of the accident he was at the funeral home talking to Emmit Young, whose nickname is "Bubbleup," and that Williams came out of the building while the witness was talking with Emmit Young and the witness was asked "Did he say anything—Williams?" A. "Asked Bubbleup did he bring them tools and things back." Q. "What things?" A. "They have to embalm them with. Bubbleup said no, and he sent him out to get them." Q. "Who sent who?" A. "Mr. Williams sent Bubbleup." Q. "What did he say to Bubbleup, if anything?" A. "Go get them." Q. "Did he say anything else?" A. "That he had been asking him about leaving those things out there." The witness further testified that he (Williams) said "I been asking you about leaving them, go get them." Q. "Go get what, did he state?" A. "Bubbleup said, yes, he would go get them." Q. "Williams told him to go get what?" A. "Embalming tools he had what they carry around with them." Q. "Did he ask about anything other than embalming tools?" A. "So finally Bubbleup went and got them. He left away from there." Q. "Did he ask him about anything else other than embalming tools?" A. "Insurance books." Q. "Insurance books. I see. Now, what happened then after Williams told Bubbleup that?" A. "He left and I left." Q. "Now did Bubbleup say anything to you before he left?" A. "Bubbleup asked me did I want to go with him and I told him no I had to go." Q. "Did Bubbleup state where he was going?" This question was objected to as leading but the witness answered "To the hospital." Q. "Which hospital?" A. "To the charity." Q. "State whether he said he was going anywhere else other than there." A. "He said a couple more places, but I don't know."

The witness Baldwin further testified that he saw Williams shortly thereafter at a cafe and he said "Hadn't I seen Bubbleup?" A. "I told him no," and "He said I sent Bubbleup out and Bubbleup ain't never came back." The cafe referred to is in the building of Williams, at or near the funeral home.

The plaintiff Odessa Humes then testified that after the accident, the defendant Emmit Young came for her in his car and that there was "A black box in the car and some letters and a big old book that looked like an insurance book and some gloves. He moved them back on the back seat and I got on the front seat with him and my little five-year-old boy started playing with the bundle of things and he taken them away from him and he put them in the glove compartment, and he still did not tell me he was the one who ran over my baby * * *," that when she found it out and asked him about the accident he said "You know how it is when Williams sends me somewhere," he said "I just don't know what to do" and he also said "I am all torn up." The plaintiff did not testify as to what was in the box or anything about any embalming tools. The testimony of Emmit Young to the effect that he had never written any insurance for the funeral home is wholly uncontradicted, and from which it may be inferred that he would have had no occasion to have had insurance books or papers in his car.

The plaintiff also introduced the hospital doctor, as her own witness, and he testified that during his seven years as superintendent of the hospital no one had ever been embalmed there, and his testimony of course negatived the idea that there was any occasion for the defendant Emmit Young to have carried embalming tools to the hospital. The proof also disclosed without dispute that no embalming had been done in private homes since the year 1945.

Both the defendants Emmit Young and Williams, as president of the appellant corporation, when testifying as adverse witnesses introduced by the plaintiff, denied categorically all of the testimony with reference to the embalming tools, and all of the alleged conversations with reference thereto, and it was also shown by the testimony of these two witnesses, and without dispute, that the privately owned automobile of Emmit Young was never used in connection with the business of his employer except in funeral processions when extra cars were needed, that on such rare occasions some other person would drive the car of Emmit Young for the reason .that he would usually be engaged at the time about his ordinary duties at the funeral home; and that when his car was used in a funeral procession his employer paid him for the use thereof.

In addition to the alleged error of the trial court in holding that the proof was not "conclusive" or "strong enough" to show that Emmit Young was acting within the scope of his employment at the time of the accident complained of, the appellant also assigns as error the ruling of the court to the effect that the plaintiff was bound by the testimony of the adverse witness Emmit Young, given in favor of the National Undertaking Company, Inc., when called as an adverse witness and in depriving the plaintiff of the right to fully cross-examine and propound leading questions to him in regard to whether or not he was on an errand or business for his employer at the time of the accident.

■■■ Under Section 1710, Code of 1942, when a party to a suit introduces any opposite party as an adverse witness, he is not bound by the testimony of such witness as to such portion thereof as he may be able to contradict by other witnesses, but he is bound by the testimony of such a witness to the extent that he is unable to contradict the same. The trial court held specifically that the plaintiff was entitled to cross-examine the defendant

Emmit Young by leading questions as to all matters touching his alleged negligence in killing the child, but the plaintiff was not entitled to lead this witness as to matters which related solely to the issue of whether or not the witness was acting within the scope of his employment and was about the business or on an errand for his employer at the time of the accident.

While there is authority in other jurisdictions to the contrary, we do not understand the rule under our decisions to be that it would have been error for the trial court to have permitted leading questions to be asked the witness, Emmit Young, while he was on the stand as an adverse party introduced by the plaintiff, touching the issue of whether or not he was on an errand or about the business of his employer at the time of the accident in question.  ██ However, we do not think the proof offered by the plaintiff was of sufficient probative value to make an issue for the jury as to whether or not this defendant was in fact on an errand for his employer or about the business of his employer on the occasion complained of, since there would have been no reason under all the proof for him to have left embalming tools or instruments at the Natchez Charity Hospital or to have carried them to his home, since it was shown, without dispute, that no embalming was ever done at said hospital or elsewhere in the City of Natchez than at the funeral home of the embalmer.

██ It was the theory of the plaintiff that this defendant had gone to the hospital for these embalming tools or instruments, whereas the superintendent of the hospital, as a witness for the plaintiff, testified in effect that there was no occasion for them ever to have been carried there. Moreover, if the employee had carried any property of his employer away from the place of business without any occasion or right to do so, and for no purpose in connection with the business of employer, then a request from the latter that he bring them back

to the funeral home where they belonged would present a doubtful question as to whether or not the employee would have been acting as the servant of the master when he undertook to do so during his hours off from his regular employment. But the Court is of the opinion that it is unnecessary to decide this precise question for the reason that on the evidence as a whole we think the circumstances relied upon by the plaintiff are insufficient to support a verdict on the alleged ground that the employee was acting within the scope of his employment and about the duties thereof at the time the child was struck and killed by the employee's automobile.

In conclusion, we think that the case on its facts is distinguishable from the cases relied upon by the plaintiff. For instance, the case of West v. Aetna Insurance Company of Hartford, Connecticut, 208 Miss. 776, 45 So. 2d 585, dealt with a commercial vehicle and not a privately owned automobile that the employee was using for his own convenience going to and from his work. No presumption arises here against the master that the servant was acting within the scope of his employment when using his own private automobile while off from his work. The judgment appealed from must therefore be affirmed.

Affirmed.

*Hall, Kyle, Arrington* and *Lotterhos, JJ.,* concur.