MISSISSIPPI POWER & LIGHT COMPANY *v.* LANEY

No. 42580          June 3, 1963          154 So. 2d 128

*Keady, Campbell & DeLong,* Greenville; *Green, Green & Cheney,* Jackson, for appellant.

*Philip Mansour,* Greenville, for appellee.

KYLE, J.

Mrs. Frances Laney, plaintiff in the court below, recovered a judgment against Fred Rucker and Mississippi Power & Light Company for damages for personal injuries alleged to have been sustained by her as a result of an automobile accident which occurred on June 9, 1961, when the 1950 Ford sedan automobile which was being driven by Fred Rucker, an employee of the defendant Power Company, collided with a 1958 Volkswagen automobile which was being driven by the plaintiff.

The declaration alleged that the plaintiff was driving south on South Main Street in the City of Greenville, which was a main thoroughfare, and as she entered the intersection of South Main Street and Robertshaw Street, the defendant Fred Rucker, who was approaching the intersection from the east, ran a ''stop sign'' at the intersection and crashed into the left side of the plaintiff's vehicle. The plaintiff alleged that the defendant Rucker was negligent in failing to bring his automobile to a stop at the intersection in obedience to the stop sign maintained at the intersection; and in that he failed to maintain a proper lookout, that he failed to yield the right of way to traffic moving along South Main Street, including the plaintiff's vehicle, that he failed to have his car under proper control upon entering the intersection, and that he entered the intersection at a time after the plaintiff had already entered the intersection, or at a time when the plaintiff was so close to the intersection as to constitute an immediate hazard, all of which was a direct and proximate cause of the collision and the injuries suffered by the plaintiff. The plaintiff further alleged that she was 27 years of age, and that she had three minor children all of whom were in the car at the time of the accident; that she suffered serious and permanent personal injuries including a severe and permanent brain injury; injury to the cervical vertebra, together with injuries to the left shoulder and ribs; that she sustained a severe blow to her head causing vasomotor cerebral instability and vasomotor headaches; that she had been treated by numerous physicians and surgeons since the date of the accident, and had been hospitalized and treated at hospitals in Greenville, Mississippi, Jackson, Mississippi, and New Orleans, Louisiana; and that she was permanently and totally disabled.

The declaration was filed and summons was issued for the defendants, Fred Rucker and Mississippi Power

& Light Company, on October 25, 1961. Fred Rucker died on November 13, 1961, and his son, Fred T. Rucker, III, qualified as administrator of his estate, and letters of administration were issued to him on November 24, 1961.

Fred T. Rucker, III, as administrator, filed an answer to the plaintiff's declaration in which he admitted that the collision occurred at the intersection of South Main Street and Robertshaw Street as alleged in the plaintiff's declaration. The administrator, however, denied each separate charge of negligence on the part of his decedent, and in his answer averred that the sole proximate cause of the collision was the negligence of the plaintiff. The administrator averred that the plaintiff was negligent in that she was driving her automobile at an excessive rate of speed in the left hand or northbound traffic lane on South Main Street, and in that she failed to maintain a proper lookout and did not have her automobile under proper control. The administrator also averred in his answer that the decedent prior to the collision stopped his automobile at the stop sign at the intersection of Robertshaw and South Main Street, and proceeded at a lawful rate of speed and with due care across South Main Street, and that the negligence of the plaintiff in proceeding at an undiminished speed into the intersection, and in the left hand or north-bound traffic lane of South Main Street, at a time when the automobile being driven by the decedent had already entered the intersection was the sole proximate cause of the collision.

The defendant Mississippi Power & Light Company filed a separate answer in which the defendant specifically denied that the decedent Fred Rucker was in and about the business of his employer Mississippi Power & Light Company, and was in the scope of his employment for the Power Company at the time and place of the alleged injuries. The defendant averred that the

decedent was acting personally and completely outside the scope of his employment at the time of the alleged accident; that the vehicle that the decedent was driving was the personal automobile of the decedent, and was not being used in and about the business of the Company. The defendant specifically denied the several acts of negligence charged against Fred Rucker in the plaintiff's declaration. The defendant averred upon information and belief that the plaintiff's negligence was the proximate or a contributing cause of the accident.

The case was tried at the June 1962 term of the court. At the conclusion of the plaintiff's evidence Mississippi Power & Light Company moved for a directed verdict in its favor. The motion was overruled. Again, at the conclusion of all of the evidence, the Power Company moved for a directed verdict in its favor, and that motion was overruled. The jury returned a verdict against both defendants in the sum of $22,000. Mississippi Power & Light Company thereupon filed a motion for judgment notwithstanding the verdict. The motion was overruled, and judgment was entered in favor of the plaintiff against both defendants for the amount fixed by the verdict of the jury. From that judgment the defendant, Mississippi Power & Light Company, has prosecuted this appeal. The estate of Fred Rucker, deceased, has not appealed from the judgment entered against it.

The only points assigned and argued by the appellant's attorneys as grounds for reversal of the judgment of the lower court are: (1) That the court erred in failing to direct a verdict for the appellant and in overruling the appellant's motions therefor, and in refusing appellant's requested peremptory instruction for a directed verdict; and (2) that the court erred in overruling the appellant's motion for a judgment notwithstanding the verdict. As stated by the appellant's attorneys in their brief, the only issues before the Court on this appeal are, whether the appellee, plaintiff in

the court below, met the burden of proving that Fred Rucker at the time of the accident complained of was guilty of negligence, and whether he was acting within the course and scope of his employment as an agent or servant of the Power Company. It is the appellant's contention that the appellee wholly failed to meet this burden of proof, and that the trial court erroneously refused to grant the appellant's request for a directed verdict.

There is ample evidence in the record to support the jury's finding that Rucker was guilty of negligence in the operation of his vehicle at the time of the accident, and that Rucker's negligence was the proximate cause of the accident. The evidence also shows that the plaintiff's injuries were both serious and permanent. But we think that the appellee failed to meet the burden of proving that Rucker, at the time of the accident, was acting within the course and scope of his employment as an agent or servant of the Power Company.

The evidence relating to Rucker's employment shows without dispute that Rucker was a civil engineer and a regular employee of the Power Company, and that he had a fixed place among the office personnel of the Company's engineering department at Greenville. He was classified as an Engineer ''B'', and he worked under the general supervision of J. W. Hall, the Company's division engineer. He had fixed hours of work, from 8 A.M. to 5 P.M. from Monday through Friday, with one hour off for lunch from approximately 12 noon to approximately 1 P.M. Like other employees of the Company he was subject to call at any time in an emergency. He spent much of his time in the field; and he had wide discretion in his work. He was not required to report to anyone or sign in when he came to work, and was not required to report to anyone when he left the office and went out into the field. He was, in fact, the No. 2 man in the engineering department.

J. W. Hall, the division engineer, testified that, when a request was received for electric service, it was assigned to Rucker or a junior engineer, and the one to whom the work was assigned would go to the site, look the job over to determine what would be necessary, and then come back and prepare a sketch, bill of materials, description of the work to be done by the line crew and an estimate of the cost. The paper work was then submitted to Hall and the division manager for their approval. Rucker had nothing to do with the construction after he made up "the job", that is to say, completed the paper work. Rucker had an office in the Power Company's Service Center at Greenville. He furnished his own automobile for travel on Company business, and was reluctant to use a Company-owned vehicle. It was stipulated that the vehicle which Rucker was driving at the time of the accident was Rucker's own automobile.

The evidence relating to the accident complained of in the plaintiff's declaration consisted mainly of the testimony of Dr. Nino Bologna and Billy Hicks, a member of the police department of the City of Greenville, who investigated the accident immediately after it occurred. Dr. Bologna testified that he left his home to go to his office after the noon meal and was driving north on Main Street which extended toward Highway No. 82; and when he reached a point about 100 yards south of the Robertshaw Street intersection he heard a noise and looked up and saw that an automobile accident had occurred at the intersection of Robertshaw Street with Main Street. Mrs. Laney was driving a Volkswagen south on Main Street. The doctor did not know what kind of car Mr. Rucker was driving, but he was on Robertshaw crossing Main. The doctor did not see the automobiles at the time of the impact; but when he arrived at the intersection Mrs. Laney's car was on the west side of the center line of Main Street.

The Volkswagen had been hit "about the door where the driver sits." The doctor was acquainted with Mrs. Laney. He had treated her children at the Children's Clinic. He got out of his car. He saw that Mrs. Laney was hysterical and her children were screaming. A policeman arrived soon after the doctor got to the intersection.

Billy Hicks, a member of the Police Department of the City of Greenville who investigated the accident, testified that he was approximately seven blocks from the scene of the accident when he received a telephone call from police headquarters about 1:10 P.M. He proceeded immediately to the scene of the accident. He stated that Main Street was 43 feet 6 inches wide on the south side of the Robertshaw Street intersection and 36 feet 6 inches on the north side of the intersection. Robertshaw Street was 31 feet wide. There was a stop sign on Robertshaw at the northeast cornor of the intersection. There was another stop sign on the other side of Main Street. Hicks stated that the automobile involved in the accident had been moved when he arrived at the scene of the accident. Most of the debris was on the right side of the center line. There were no skidmarks at the intersection. Hicks stated that Mrs. Laney had been carried to the hospital when he arrived at the scene of the accident, but he saw her later at the General Hospital. She seemed to be in much pain. She could not give any definite answers to his questions; he could not understand what she was saying; and he could not complete his report from what she told him. Hicks stated that the damage to 'the Volkswagen was on the left side and was considerable. The damage to the Ford automobile driven by Mr. Rucker was in the front. Hicks stated that he talked to Mr. Rucker at the scene of the accident, and he asked him whether he stopped at the stop sign at the intersection. Mr. Rucker first told him that he did not stop at the stop sign.

Hicks then asked him how fast he was driving when he came through the intersection, and he said he did not think that he was exceeding the speed limit which was 25 miles an hour. Hicks testified that Rucker stated that he ran the stop sign, but Rucker later said he thought that he stopped at the stop sign — he wasn't sure. Hicks stated that he talked to Rucker several days later at the office of the Power Company, and Rucker said to him at that time that he would like to back up from the statement he had previously made, and Rucker said that he did stop for the stop sign. Hicks stated that he asked Rucker who owned the automobile that he was driving, and Rucker said that he owned the automobile.

On the issue as to whether Rucker at the time of the accident was engaged in the scope of his employment and in furtherance of the business of the master, or was merely returning to work at the Service Center, the testimony is substantially as follows: J. W. Hall, who was division engineer for the Power Company at the time of the accident and Rucker's immediate superior, testified that Rucker's working hours were from 8 A.M. to 12 Noon and from 1 P.M. to 5 P.M.; that Rucker was in his office in the Service Center on June 9, 1961; that he came into the office a little after 8 o'clock. Hall did not know where Rucker was during the entire morning, but he knew that Rucker was at the office at the beginning of the morning and just before lunch.

James D. Jacks, Service Superintendent for Mississippi Power & Light Company, testified that he saw Mr. Rucker at the Service Center during the morning of June 9 and off and on during the day. He was at his desk shortly before the noon hour. Jacks stated that he saw Mr. Rucker when he was going toward his home about the noon hour. He was driving his own car on Highway 82, and Jacks followed along behind him about four blocks, and left him just before he got to

Penn's Lane. That was about 12:10 P.M. Mrs. Sallie Rucker, Fred Rucker's mother, testified that Fred came to lunch on the day of the accident shortly after 12 o'clock. She did not recall just what time he left after lunch. Jacks stated that he heard of the accident about one o'clock. He drove to the scene of the accident and arrived there about 1:10 P.M. Jacks stated that Rucker when going from his home to his office at the Service Center, usually went straight out Penn's Lane south until he hit Robertshaw, then he turned west on Robertshaw and came on across Main and Clay and on into Broadway and the Service Center. Jacks stated that the distance was 1.6 miles, and it took him about seven minutes to make the trip back to the Service Center. Jacks stated that Rucker used his personal automobile on Company business and usually carried certain company equipment in his car, including a small rolling wheel for measuring and a tape measure.

It is argued on behalf of the appellee, in support of the judgment of the lower court, that the proof is overwhelming to the effect that a general relationship of master and servant existed between Rucker and the appellant; and that, when such relationship is shown, a rebuttable presumption is raised that the servant at the time of the accident was engaged in the scope of his employment and in the furtherance of his master's business; and the appellant cites in support of her contention on that point the following cases: Merchants Co. v. Tracy, 175 Miss. 49, 166 So. 340; Barmore v. Vicksburg S. & P. R. Co., 85 Miss. 426, 38 So. 210, 70 L.R.A. 627; Slaughter v. Holsomback, 166 Miss. 643, 147 So. 318; Southern Bell Tel. & Tel. Co. v. Quick, 167 Miss. 438, 149 So. 107; West v. Aetna Ins. Co., 208 Miss. 776, 45 So. 2d 585.

But the decisions rendered in those cases, in our opinion, are not controlling here for the reason that in each of those cases the record showed that the employee was

driving a vehicle owned by the employer; while in the case that we have here it is admitted that Rucker was driving his own automobile.

■■ ■ Proof of the fact that a general relationship of master and servant existed between Rucker and the appellant was insufficient in itself to raise a rebuttable presumption that Rucker at the time of the accident was engaged in the course of his employment and in the furtherance of his master's business.

■■ ■ The mere fact that one in the general employment of another driving the employee's own vehicle, traveling to his job is insufficient in the absence of special circumstances, to justify the conclusion that the employee is acting within the scope of his employment so as to charge the employer with responsibility for the negligent operation of his vehicle. McCaughen v. Missouri Pac. R. Co. (Mo. Ct. of App. 1925), 274 S.W. 97; Nagy v. Kangesser (1928), 32 Ohio App. 527, 168 N.E. 517; Gittelman v. Hoover Co. (1940), 10 A. 2d 411; Larkins v. Utah Copper Co. et al. (Oregon 1942), 127 P. 2d 354; S. & W. Construction Co. v. Bugge (1943), 194 Miss. 822, 13 So. 2d 645; Humes v. Young (1954), 219 Miss. 417, 69 So. 2d 245; Huddy Cyclopedia of Automobile Law, 9th Ed., Vols. 7-8, pp. 348, 349, Sec. 138, and cases cited.

In an extended annotation of Employee's Liability for Negligence of Employee in Driving his Own Car, which appears in 52 A.L.R. 2d pp. 287-301, it is said: "If the employee's use of his own car in the business can be found to have been authorized, there still remains the question whether, at the time of the accident in suit, the car was being so used. This issue is ordinarily determined under the same tests and in the light of the same factors as where the employee is using the employer's car, with the important distinction, however, that where the employee is using his own car the presumption or permissible inference of use in the scope

of employment which arises from a showing that one in the general employment of the car owner is driving it, appears to be inapplicable.''

In the case of McCaughen v. Missouri Pac. R. Co. (Mo. Ct. of App. 1925), 274 S.W. 97, the Court held that the presumption that the chauffeur, is acting within the scope of his employment when injury is done to another by negligent driving, does not prevail where the employee is driving his own automobile; but in such case the burden falls upon one alleging negligence to show that the chauffeur was acting within the scope of his employment.

In the case of Nagy v. Kangesser (1928), 32 Ohio App. 527, 168 N.E. 517, the Court held that a master cannot be held liable for an employee's injuries to a third person unless the employee's act is part of an actual duty connected with the employment, and that, where an employee struck the plaintiff while the employee was driving his own automobile on his way to work, the master was not liable under the doctrine of master and servant, since the employee was not an employee in the performance of any duty in behalf of the master. The Court also held in that case that the fact that the employee, while on his way to the employer's office prior to the time for resumption of his duties, had in his possession money collected for the employer on the previous day to be turned over to the employer on reaching the office did not make the employer liable under the doctrine of respondeat superior.

In the case of S. & W. Construction Co. v. Bugge (1943), 194 Miss. 822, 13 So. 2d 645, the Court held that, where a cost clerk, while going home in his own automobile after work on Saturday, took papers with him to complete the compilation at home pursuant to instructions, and injured a pedestrian on his way back to work Monday, the employer was not liable to the pedestrian on the theory that the injury occurred in

the "scope of employment" of the clerk. In its opinion in that case the Court said: "We are of the opinion that what Ellis was doing at the time of the injury was that of serving his own purpose of transporting himself to the place where his work for the day was to begin, and the fact that he happened, under the stated circumstances, to have with him some papers belonging to his employers was a mere collateral incident, or that at the most that could be said of it, he was engaged in the dual purpose of serving himself and also his employers."

In Humes v. Young (1954), 219 Miss. 417, 69 So. 2d 245, the mother of a small child brought a wrongful death action against Emmitt Young and his employer, National Undertaking Company, Inc. Young had run over the plaintiff's child while driving his own car during his off-duty hours. The trial court gave a peremptory instruction for the corporate defendant, and the plaintiff appealed from the judgment entered in favor of the corporate defendant. The defendant Young did not appeal a $7,500 verdict against him. This Court affirmed the judgment in favor of the corporate defendant, and in its opinion in that case the Court said: "No presumption arises here against the master that the servant was acting within the scope of his employment when using his own private automobile while off from his work."

The general rule is that a servant using an automobile, whether belonging to his master or to himself, in going to and from his place of work, is not at such times engaged in work for his master but acts for his own purposes only. Bougeois v. Mississippi School Supply Co. (1934), 170 Miss. 310, 155 So. 209; S. & W. Construction Co. (1943), 194 Miss. 822, 13 So. 2d 645; Humes v. Young (1954), 219 Miss. 417, 69 So. 2d 245.

■■ ■ The evidence in this case shows that the accident which resulted in the appellee's injuries occurred while Rucker was returning from his home on Penn's Lane to his place of work after having had his midday meal at home with his mother. There is no evidence in the record to show that Rucker had any duties to perform for his employer during the lunch hour or after eating his midday meal and before returning to his office at the Service Center. The only conclusion that can be drawn from the evidence is that Rucker, at the time the appellee was injured, was serving his own purpose of transporting himself back to the place where his work for the day was to be resumed. As stated by the Court in The Fidelity & Casualty Company of New York v. Carpenter (1956), 234 F. 2d 528, "Where, as here, a man uses his own privately owned automobile at will for his business, and where he is not paid any allowance for automobile expenses on a mileage or any other basis, it seems clear that much more must be shown by a plaintiff in order to recover against the man's employer than the fact that he is an employee and that he is in an automobile that he uses for his work."

The fact that it was customary for Rucker to carry a measuring line and other small items of equipment in his car was a mere collateral incident. There is no proof in the record to indicate that such items of equipment were in the automobile at the time of the accident, or that Rucker had made use of such items of equipment at·any time during the day the accident occurred. The appellee offered no evidence to show that the negligent act was committed within the course and scope of Rucker's employment. The lower court, in our opinion, erred in refusing to grant the peremptory instruction requested by the appellant at the conclusion of all of the evidence.

For the reasons stated above the judgment of the lower court is reversed as to the appellant Mississippi

Power & Light Company and judgment will be entered here in favor of the appellant.

Reversed and judgment rendered in favor of the appellant.

*Lee, P. J., and Arrington, Ethridge and Rodgers, JJ.,* concur.