# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-CA-01710-COA

**WAYNE COOPER AND EXLENA HORTON, INDIVIDUALLY AND AS CO-ADMINISTRATORS OF THE ESTATE OF MARY HORTON COOPER, DECEASED, AND ON BEHALF OF ALL WRONGFUL DEATH BENEFICIARIES OF MARY HORTON COOPER, VICTOR LONGINO, JR., KIZZY HORTON, LAMAR HORTON, AND ANTHONY HORTON**

**APPELLANTS**

v.

**SEA WEST MECHANICAL, INC.**

**APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 11/09/2015 |
| TRIAL JUDGE: | HON. PRENTISS GREENE HARRELL |
| COURT FROM WHICH APPEALED: | LAWRENCE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | EDWARD D. MARKLE |
| ATTORNEYS FOR APPELLEE: | L. CLARK HICKS JR. |
| | R. LANE DOSSETT |
| NATURE OF THE CASE: | CIVIL - WRONGFUL DEATH |
| TRIAL COURT DISPOSITION: | GRANTED APPELLEE'S MOTION FOR SUMMARY JUDGMENT |
| DISPOSITION: | AFFIRMED - 05/09/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE LEE, C.J., BARNES AND WESTBROOKS, JJ.**

**LEE, C.J., FOR THE COURT:**

¶1.    In this appeal concerning a wrongful death, we must determine whether the trial court erred in granting Sea West Mechanical Inc.'s motion for summary judgment.  Finding no error, we affirm.

**PROCEDURAL HISTORY**

¶2. On August 7, 2014, Mary Horton Cooper stopped her vehicle on Highway 84 in Lawrence County, Mississippi.[1] She was standing at the rear of her vehicle when she was struck by Zachary Savoie. Cooper died at the scene. Her wrongful-death beneficiaries (collectively "Cooper") filed suit in the Lawrence County Circuit Court against Savoie; Fleisha Sanford, Savoie's mother; and Sea West, Savoie's employer.

¶3. Cooper eventually settled with Savoie, and the suit against him was dismissed. The trial court granted summary judgment in favor of both Sanford and Sea West. Since Sanford was dismissed as a party to this appeal, the only issue is whether the trial court erred by granting summary judgment for Sea West.

**FACTS**

¶4. Savoie began working for Sea West in December 2013. One condition of employment was passing a drug test. Zachary Hughes, Sea West's safety representative, administered Savoie's preemployment drug test. In his deposition, Hughes noted that this particular drug test screened for six different drugs, including marijuana, and Savoie's test was negative for all six.

¶5. Savoie admitted to drug use, most frequently marijuana and whippets—small canisters containing pressurized nitrous oxide. On August 6, 2014, the night before the accident, Savoie smoked marijuana between 9 p.m. and midnight. Savoie also admitted to smoking

---

[1] Cooper contends that Mary's vehicle was parked on the side of the highway. But the police report indicates Mary's car was "in the right lane of U.S. [Highway] 84 Westbound." The section in the report titled "[c]ontributing circumstances" contains an "x" in the box "[l]ying and/or illegally in roadway." Also, "roadway" is marked under the section in the report titled "[c]rash location."

marijuana at 5 a.m. the day of the accident. During his deposition, Savoie stated he could not remember the accident—only that he was driving on Highway 84 around 11:30 a.m. during his lunch break. He then woke up, and his truck and Mary's vehicle were both in a ditch. Savoie could not say whether Mary's vehicle was parked in the road or on the side of the road when he struck it. Testing of Savoie's blood revealed the presence of marijuana.

¶6.     At the time of the accident, Savoie had been living with his mother, Sanford. Savoie stated that he did not use drugs in the house or keep drug paraphernalia there. Savoie further stated that he only smoked marijuana outside the house and only if his mother was absent. Although Sanford had found marijuana in Savoie's room in the past, she was not aware of his current drug use. And she did not see him the night prior to or the morning of the accident.

¶7.     Chase Westbrooks, the owner of Sea West, stated the company had a safety manual that included the drug policy. This manual was shown to all new employees, including Savoie. According to Westbrooks, he had no reason to suspect Savoie of any drug use. He frequently observed his employees during work and had never seen Savoie act as if he was under the influence of drugs.

## STANDARD OF REVIEW

¶8.     The grant of a motion for summary judgment is reviewed de novo. *Karpinsky v. Am. Nat'l Ins.*, 109 So. 3d 84, 88 (¶9) (Miss. 2013). We view the evidence "in the light most favorable to the party against whom the motion has been made." *Id.*

> Summary judgment is appropriate and shall be rendered if the pleadings, depositions, answers to interrogatories and admissions on file, together with

3

the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to [a] judgment as a matter of law. Importantly, the party opposing summary judgment may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavit or as otherwise provided in [Mississippi Rule of Civil Procedure 56], must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, will be entered against him.

[The Mississippi Supreme] Court has explained that in a summary judgment hearing, the burden of producing evidence in support of, or in opposition to, the motion is a function of Mississippi rules regarding the burden of proof at trial on the issues in question. The movant bears the burden of persuading the trial judge that: (1) no genuine issue of material fact exists, and (2) on the basis of the facts established, he is entitled to [a] judgment as a matter of law. The movant bears the burden of production if, at trial, he would bear the burden of proof on the issue raised. In other words, the movant only bears the burden of production where [the movant] would bear the burden of proof at trial. Furthermore, summary judgment is appropriate when the non-moving party has failed to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial.

*Id.* at 88-89 (¶¶10-11) (internal quotation marks, emphasis, and citations omitted).

**DISCUSSION**

¶9.     In the only issue on appeal, we must determine whether the trial court properly granted summary judgment for Sea West.

¶10.    Cooper first contends that the trial court addressed an issue in its order granting summary judgment that Sea West did not raise in its motion for summary judgment—namely, that Sea West was not negligent regarding its drug testing and policies. This particular issue was not raised in Sea West's motion or amended motion for summary judgment, but both parties discussed it during the summary-judgment hearing. The trial court did note that "Sea West satisfied its own policies regarding drug testing, but, even if it had not, there is no

4

proximate causal connection between the employer's actions in drug testing and the accident in this case." Regardless, the trial court's main reason for granting summary judgment for Sea West was that Sea West was not vicariously liable for Savoie's actions. The trial court found the following:

> At the time of the accident, Savoie was off the clock, in his personal vehicle, and he was not paid for his lunch break. He was on a personal errand that was not in furtherance of his employer's interest. The undisputed record evidence shows that Savoie was not within the course and scope of his employment at the time of the accident . . . . Sea West is not vicariously liable for Savoie's actions as a matter of law.

¶11. "[T]he doctrine of respondeat superior, from which vicarious liability is derived, . . . specifically applies to an employer-employee relationship and holds employers liable in tort for the negligent actions of their employees, taken on behalf of the employer while in the course and scope of their employment." *Thomas v. Cook*, 170 So. 3d 1254, 1259 (¶21) (Miss. Ct. App. 2015). In determining whether an employee is acting within the scope of his employment, the proper question to ask is "was he at the time doing any act in furtherance of his master['s] business?" *Holliday v. Pizza Inn Inc.*, 659 So. 2d 860, 864 (Miss. 1995). We agree with the trial court that Sea West was not vicariously liable for Savoie's actions. At the time of the accident, Savoie was on his unpaid lunch break and driving his personal vehicle. There is no evidence that Savoie was acting in furtherance of Sea West's business. *See also Miss. Power & Light Co. v. Laney*, 247 Miss. 71, 81-86, 154 So. 2d 128, 132-34 (1963). Savoie did receive a per diem on the days he had to travel for work, but on the day in question, he was working at Sea West.

¶12. Cooper also contends that genuine issues of fact exist regarding Sea West's

knowledge of Savoie's drug use and its inadequate drug screening—facts that Cooper previously argued were improperly raised during the summary-judgment hearing. However, Westbrooks stated in his deposition that he frequently observed his employees during work and had never seen Savoie act as if he was under the influence of drugs. Westbrooks stated that he had suspected two previous employees were using drugs and fired them after they refused to take a drug test. Although Savoie tested positive for marijuana on the day of the accident, there was no expert evidence regarding the test results or how the level of marijuana present might affect someone. There was simply no evidence that Sea West knew or should have known that Savoie was under the influence of marijuana on the day of the accident.

¶13. **THE JUDGMENT OF THE LAWRENCE COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.**

**IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, FAIR, WILSON, GREENLEE AND WESTBROOKS, JJ., CONCUR.**