# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2023-CA-01289-COA

**TRISTAN FISHER, VERITY SMITH GERMENIS, INDIVIDUALLY AND AS ADMINISTRATRIX OF THE ESTATE OF DANIEL J. GERMENIS, DECEASED, AND AS BENEFICIARY UNDER THE MISSISSIPPI WRONGFUL DEATH ACT OF THE STATE OF MISSISSIPPI, GABRIEL SALVADOR AND DANA LE**    APPELLANTS

v.

**ALL ABOUT PAINTING AND CLEANING, INC.**    APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 11/06/2023 |
| TRIAL JUDGE: | HON. RANDI PERESICH MUELLER |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT, SECOND JUDICIAL DISTRICT |
| ATTORNEYS FOR APPELLANTS: | JAMES KENNETH WETZEL GARNER JAMES WETZEL |
| ATTORNEY FOR APPELLEE: | HARRIS FREDERICK POWERS III |
| NATURE OF THE CASE: | CIVIL - WRONGFUL DEATH |
| DISPOSITION: | AFFIRMED - 05/27/2025 |
| MOTION FOR REHEARING FILED: | |

**BEFORE WILSON, P.J., LAWRENCE AND EMFINGER, JJ.**

**WILSON, P.J., FOR THE COURT:**

¶1. Emmett Bennett, a civilian working for a painting contractor on Keesler Air Force Base, ingested kratom and oxycodone laced with fentanyl while off-base on his unpaid lunch break. Bennett was driving back to his jobsite when his vehicle veered across the road, jumped a curb, and struck four airmen on a walking path on the opposite side of the road. All four airmen were severely injured, and one died as a result of his injuries. Bennett later

pled guilty in federal court to aggravated DUI resulting in death.

¶2. The widow of the deceased airman and the three surviving airmen sued Bennett and his employer, All About Painting and Cleaning Inc. ("All About"), in Harrison County Circuit Court. The circuit court later granted summary judgment in favor of All About, holding that there were no genuine issues of material fact and that All About was not vicariously liable for Bennett's actions because Bennett was not acting in the course or scope of his employment or performing any act in furtherance of his employment at the time of the fatal collision. We find no error and affirm.

## FACTS AND PROCEDURAL HISTORY

¶3. On July 28, 2021, Bennett was working as a painter for All About on Keesler Air Force Base in Biloxi. Bennett was painting housing units on the base. He had only been employed by All About for approximately three weeks.

¶4. Around 12:05 p.m., Bennett clocked out for an unpaid lunch break. During his lunch break, Bennett illegally purchased four oxycodone pills. The pills contained fentanyl, although Bennett claimed that he requested oxycodone only. Bennett ingested one pill, dropped the rest off at his house, and then drove back to the base. Bennett later admitted that he had also taken about 10 kratom pills around 10 a.m. and took "a kratom 'shot' and a Red Bull beverage" during his lunch break. After Bennett reentered the base, his vehicle veered across the road, jumped a curb, and struck four airmen—Daniel Germenis, Tristan Fisher, Gabriel Salvador, and Dana Le—on a walking path off the opposite side of the road. All four airmen were severely injured, and Germenis died as a result of his injuries. Later, Bennett

2

tested positive for marijuana in addition to fentanyl and kratom. Bennett admitted that he smoked marijuana regularly but denied that he had done so on his lunch break. Bennett subsequently pled guilty in federal court to aggravated DUI resulting in death.

¶5. Germenis's widow, Fisher, Salvador, and Le sued Bennett and All About in circuit court, alleging that Bennett was negligent and that All About was vicariously liable for Bennett's negligence.

¶6. In his deposition, Bennett testified that he used an app on his cell phone to clock in and out while working for All About. On July 28, 2021, he clocked in at 8:01 a.m., clocked out for lunch at 12:05 p.m., and clocked back in at 12:39 p.m. Bennett testified that while on his lunch break, he bought four 30 milligram tablets of oxycodone and ingested one before returning to work. He later learned that the pills were "laced" with fentanyl. Bennett testified, "I felt fine. Like I could feel that, you know, I was altered. But I felt fine. I went to the gate [to the base]. I always rolled down the window, showed them my paper, greeted them, drove [through]. That's literally all I remember until after the accident occurred." He further stated, "So I drove through the entrance. And then I remember getting out of my truck. And I was in a field. And when I got out, I seen a man -- laying on the ground. And I ran over to him. And he was bleeding. . . . And then I remember getting apprehended." Although Bennett clocked back in at 12:39 p.m., the fatal collision did not occur until approximately 1:07 p.m. Bennett could not explain the discrepancy in his deposition. Bennett was also asked, "At the time that you entered Keesler Air Force base, did you consider yourself furthering . . . your employer's business?" He answered, "Yes, sir."

3

¶7. In the charging affidavit in Bennett's federal criminal case, an FBI agent noted that Bennett's statement that he was returning to work was "inconsistent with his direction of travel" at the time of the fatal collision. Bennett was driving south on Ploesti Drive, away from his assigned jobsite on Harmon Circle.

¶8. Tabitha Cazalas, Bennett's supervisor at All About, stated in an affidavit that All About does not pay its employees for time traveling to or from work and that All About's timekeeping policy does not allow employees to clock in before they reach their assigned jobsite. Cazalas stated that All About uses a GPS-enabled timekeeping app to monitor employees' time. She stated that employees are required to clock out for their unpaid lunch break and that Bennett violated All About's policy by clocking back in at 12:39 p.m. on July 28, 2021, while he was "away from his assigned work location." Indeed, Bennett was still off base property near the intersection of Jim Money Road and Pass Road when he clocked in, and he "was not paid for his early clock in." Neither Cazalas nor any other All About employee had assigned Bennett "any work task" "to be performed off the premises of Keesler Air Force Base or during his lunch break on July 28, 2021."

¶9. All About filed a motion for summary judgment, arguing that there was no dispute as to any material fact and that it was not vicariously liable for Bennett's acts because "Bennett was not acting in the course and scope of his employment" or "performing any act in furtherance of [All About's] business" at the time of the fatal collision. Following a hearing, the circuit court granted All About's motion for summary judgment on those grounds.[1]

---

[1] The circuit court certified its order granting All About's motion for summary judgment as final pursuant to Mississippi Rule of Civil Procedure 54(b). The court also

4

## ANALYSIS

¶10.    We review an order granting summary judgment de novo, viewing the evidence in the light most favorable to the non-moving party. *Karpinsky v. Am. Nat'l Ins.*, 109 So. 3d 84, 88 (¶9) (Miss. 2013).   Summary judgment "shall" be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  M.R.C.P. 56(c).  Indeed, "the court *must* grant summary judgment unless . . . the record demonstrates at least the minimum quantum of evidence sufficient to justify a determination in favor of the non-moving party by a reasonable juror." *Glover ex rel. Glover v. Jackson State Univ.*, 968 So. 2d 1267, 1274 (¶19) (Miss. 2007) (footnote omitted).  The non-moving party "may not rest upon the mere allegations or denials of his pleadings" and must respond with competent evidence of "specific facts showing that there is a genuine issue for trial."  M.R.C.P. 56(e).

¶11.    "The doctrine of respondeat superior, from which vicarious liability is derived, specifically applies to an employer-employee relationship and holds employers liable in tort for the negligent actions of their employees, taken on behalf of the employer while in the course and scope of their employment." *Cooper v. Sea West Mech. Inc.*, 219 So. 3d 550, 553 (¶11) (Miss. Ct. App. 2017) (brackets and ellipsis omitted) (quoting *Thomas v. Cook*, 170 So. 3d 1254, 1259 (¶21) (Miss. Ct. App. 2015)).  "In determining whether an employee is acting within the scope of his employment, the proper question to ask is 'was he at the time doing

granted the plaintiffs' motion for summary judgment against Bennett as to liability.

any act in furtherance of his master's business?'" *Id.* (brackets omitted) (quoting *Holliday v. Pizza Inn Inc.*, 659 So. 2d 860, 864 (Miss. 1995)).

¶12. In *Cooper*, an employee of Sea West Mechanical, Savoie, was driving his truck on his unpaid lunch break when he struck and killed a woman who was standing next to her vehicle, which was parked in or on the side of the road. *Id.* at 551-53 (¶¶2, 5, 10). Savoie's post-accident blood test "revealed the presence of marijuana." *Id.* at 551 (¶5). The decedent's wrongful death beneficiaries sued Sea West. *Id.* at (¶2). The circuit court granted summary judgment in favor of Sea West, holding that it was not vicariously liable for Savoie's actions. *Id.* at 552-53 (¶10). On appeal, this Court affirmed, holding that "Sea West was not vicariously liable for Savoie's actions. *At the time of the accident, Savoie was on his unpaid lunch break and driving his personal vehicle. There is no evidence that Savoie was acting in furtherance of Sea West's business.*" *Id.* at 553 (¶11) (emphasis added) (citing *Miss. Power & Light Co. v. Laney*, 247 Miss. 71, 81-86, 154 So. 2d 128, 132-34 (1963)).

¶13. Similarly, in *Laney*, our Supreme Court held that an employee, Rucker, who was returning to work after his lunch break, was not acting within the course and scope of his employment, and his employer therefore was not vicariously liable for injuries caused by his negligent driving. *Laney*, 247 Miss. at 85-86, 154 So. 2d at 134. The Supreme Court stated:

> The general rule is that a servant using an automobile, whether belonging to his master or to himself, in going to and from his place of work, is not at such times engaged in work for his master but acts for his own purposes only. The evidence in this case shows that the accident which resulted in the [plaintiff's] injuries occurred while Rucker was returning from his home . . . to his place of work after having had his midday meal at home with his mother. There is no evidence in the record to show that Rucker had any duties to perform for his employer during the lunch hour or after eating his midday meal and before

6

returning to his office . . . . The only conclusion that can be drawn from the evidence is that Rucker, at the time the [plaintiff] was injured, was serving his own purpose of transporting himself back to the place where his work for the day was to be resumed.

*Id.* (citations and paragraph break omitted).

¶14.    More recently, this Court held that

[u]nder the "going and coming" rule, "it is a general rule that an employer is not liable for the acts of his employees going to and returning from work." *Colvin v. Ellis Constr. Co.*, 840 F. Supp. 59, 62 (N.D. Miss. 1993) (citing *Smith v. Anderson-Tulley Co.*, 608 F. Supp. 1143, 1146 (S.D. Miss. 1985)). Our Supreme Court has long held that "it is the business of the employee to present himself at the place of employment, and the relation of master and servant does not exist while he is going between his home and his place of employment." *Mar-Jac Poultry v. Love*, 283 So. 3d 34, 41 (¶19) (Miss. 2019) (quoting *Brown v. Bond*, 190 Miss. 774, 1 So. 2d 794, 799 (1941)).

*Terpening v. F.L. Crane & Sons Inc.*, 353 So. 3d 1100, 1104 (¶11) (Miss. Ct. App. 2022)

(footnote and brackets omitted).  In *Terpening*, we also noted that

[t]he doctrine of respondeat superior has its basis in the fact that the employer has the right to supervise and direct the performance of the work by his employee in all its details, and this right carries with it the correlative obligation to see to it that no torts shall be committed by the employee in the course of the performance of the character of work which the employee was appointed to do.

*Id.* at 1103 (¶9) (brackets omitted) (quoting *Mar-Jac Poultry*, 283 So. 3d at 37 (¶11)).

¶15.    Similar to *Cooper* and *Laney*, Bennett was driving his personal vehicle while returning from his unpaid lunch break when he struck the airmen.  He had also consumed kratom and oxycodone laced with fentanyl during his lunch break in violation of All About's drug-free workplace policy.  Bennett had not accomplished any work-related tasks or done anything to further All About's business while on his break.  As the foregoing cases make clear, the

7

mere fact that Bennett was en route to his jobsite does not bring him within the course and scope of his employment. Moreover, All About had no ability to supervise Bennett while he was away from the jobsite on his lunch break, so All About had no "correlative obligation" for his negligent conduct or torts under the doctrine of "respondeat superior." *Terpening*, 353 So. 3d at 1103 (¶9) (quoting *Mar-Jac Poultry*, 283 So. 3d at 37 (¶11)).

¶16.     In support of their argument that Bennett was acting within the scope and course of his employment, the plaintiffs rely on (1) Bennett's own testimony in response to a leading question that he "considered [him]self furthering . . . [his] employer's business" as soon as he passed through the base gate; (2) the fact that Bennett clocked in remotely via a cell phone app prior to the fatal collision; and (3) the fact that Bennett, a civilian, was allowed to enter the base only because he worked for All About. However, an employee's own conclusory and wholly unsupported assertion or belief that he is furthering his employer's business cannot create a genuine issue of fact. Nor does Bennett's unilateral decision to clock in early—while still off-base, approximately twenty-eight minutes before the fatal collision, and in violation of his employer's policy. Finally, as stated above, "it is a general rule that an employer is not liable for the acts of his employees going to and returning from work." *Terpening*, 353 So. 3d at 1104 (¶11) (quoting *Colvin*, 840 F. Supp. at 62). There is no authority recognizing, or sound reason for making, an exception to this well-established rule just because a particular employee's commute took him through an area under federal jurisdiction or subject to restricted access. The circuit court correctly held that there were no genuine issues of material fact and that All About was not liable for Bennett's acts

because he was not within the scope and course of his employment or furthering All About's business at the time of the fatal collision.

¶17.    **AFFIRMED.**

**BARNES, C.J., CARLTON, P.J., WESTBROOKS, McDONALD, LAWRENCE, McCARTY, EMFINGER, WEDDLE AND ST. PÉ, JJ., CONCUR.**